(90 N. W. Rep. 262.)

---

### IN RE MARTIN C. FREERKS.

---

**Attorney—Disbarment—Misleading Court—Fraudulent Judgment.**

A civil action was instituted in Richland county, wherein one Mary Ann Jones was plaintiff and M. C. Freerks, the accused herein, was defendant. The relief sought by said action was the removal of a cloud upon the title of land in Richland county owned by the plaintiff, which cloud was created by a tax certificate issued on a tax sale of said land held in 1885 for taxes assessed on said land in 1882, 1883, and 1884. Said taxes were illegal, for the reason that prior and long subsequent to said tax sale the land in question belonged to the government. When said action was commenced the accused was the attorney of the said Mary Ann Jones, and, professedly acting in her behalf, drew the complaint, answer, and order for judgment in said action, and, appearing in his own behalf, drew and served the answer to the complaint. At the request of the accused, Charles E. Wolfe, Esq., an attorney at law, as an act of courtesy to the accused, gratuitously signed the complaint and admitted service of the defendant's answer, and, upon the pleadings, obtained the signature of the judge of the district court to an order for judgment in the action. The order, in effect, directed the entry of a judgment declaring said tax certificate to be void because the taxes were assessed on government land, and also directed that the same should be cancelled as a cloud upon plaintiff's title. This order was delivered to the accused by said Charles E. Wolfe with the understanding on the part of Wolfe that the accused would frame a judgment under and pursuant to the order, and cause the same to be entered by the clerk of the court. Subsequently the accused drew up and presented to the deputy clerk of the district court a form of judgment in said action, which judgment was entered by said deputy clerk at the instance and on the request of the accused, and the same was entered in the absence and without the concurrence or knowledge of said Charles E. Wolfe. The judgment, as entered, granted relief to the plaintiff as directed by the order for judgment, but said judgment, by its terms, also purported to grant other and further relief, which relief was wholly unwarranted by the order, and which could not have been lawfully granted under the facts alleged in the complaint. Said extraneous relief, as embodied in the judgment, was couched in the following terms: "And the defendant is entitled to have the amount thereof, together with interest thereon at the rate of 7 per cent. per annum from the date of the tax sale described in the complaint, refunded out of the county treasury upon an order therefor from the county auditor." Upon the presentation of this judgment to the county auditor that officer delivered to the accused, who was then the owner of the tax certificate, orders on the county treasurer for an amount aggregating the sum of $66.30. *Held*, that in procuring said judgment to be entered by the deputy clerk of the district court, embracing the language above quoted, the accused

was guilty of deceit and artifice, whereby the court was misled and fraudulently induced to enter a judgment which the court did not desire to enter, and which it had not directed to be entered.

## Fraud by Attorney.

*Held*, further, that a fraudulent use was made of said false and fraudulent judgment in the matter of inducing the auditor to deliver the said county orders to the accused.

## Deceit by Attorney.

*Held*, further, that in committing said fraudulent acts the accused was guilty of deceit and unprofessional conduct, within the meaning of subdivision 3 of section 427 and of section 428 of the Revised Codes of 1899, and that under section 428 the accused was guilty of conduct for which he may lawfully be either disbarred or suspended from practice as an attorney at law.

## Suspension from Practice.

*Held*, further, that under the extenuating facts stated at length in the opinion the court will enter an order suspending the accused from practice temporarily, but to be reinstated conditionally and upon terms as stated in detail in the order of suspension.

## Disbarment Proceedings in District Court.

*Held*, further, that while this court has authority to discipline attorneys, and may, in so doing, either suspend them from practice or disbar them, nevertheless this court disapproves of the practice of initiating such proceedings in this court, unless in exceptional cases, or where the offenses complained of are committed in this court, or with reference to the orders of this court. As a general rule, that disbarment proceedings under the statute authorizing the same should be initiated in the district court, see sections 434—437, Rev. Codes 1899.

In the matter of the proceedings for the disbarment of Martin C. Freerks. Judgment for defendant.

*Charles E. Wolfe, B. G. Tenneson,* and *Edward Engerud,* for informants.

*Martin C. Freerks* and *George W. Freerks,* for respondent.

WALLIN, C. J. (after stating the facts). In this proceeding Charles E. Wolfe, B .G. Tenneson, and Edward Engerud, attorneys of this court, appear as informants against the accused and as attorneys in support of the accusation. Martin C. Freerks appeared in person in his own behalf, assisted by George W. Freerks, Esq., his attorney. The proceeding was initiated in this court by an accusation filed with the clerk of the court embracing the grounds of the accusation. To this accusation the defendant interposed an answer, whereupon, by consent of counsel, an order was entered appointing a referee to take the testimony herein, and report the same to the court. In pursuance of such order, all the testimony offered on both sides was taken, and filed in this court by the referee. The matter was finally submitted for determination upon a written brief filed by counsel in support of the accusation, and, after

being orally argued by the accused in his own behalf, it was submitted to the court in behalf of the accused upon such oral argument and upon a brief filed by the attorneys for the accused.

The accusation filed in this court was signed by all of said attorneys for the prosecution, and the same was verified on information and belief by said Edward Engerud. After excluding formal parts, the accusation is as follows: "To the Honorable, the Justices of the Supreme Court of the State of North Dakota: The undersigned, Chas. E. Wolfe, B. G. Tenneson, and Edward Engerud, members of the bar of your honorable court, do respectfully show and inform your honors as follows: (1) That the undersigned were, on the 19th day of October, 1901, by an order of the district court in and for Richland county, North Dakota, appointed and directed to draft accusations against Martin C. Freerks, an attorney and counselor at law, and member of the bar of the supreme court of the state of North Dakota, and to file said accusations with the supreme court, to the end that said accusation may be investigated, and such action taken therein as, in the judgment of the said supreme court, may seem meet and proper, which original order is hereto attached, and made a part of this accusation. (2) That the said Martin C. Freers is now, and for more than two years has been, a resident of the city of Wahpeton, county of Richland, and state of North Dakota, and is now, and has been during all the time aforesaid, actually engaged in the practice of said profession. (3) That said Martin C. Freerks is now, and for more than three years last past has been, a member of the firm of Freerks & Freerks a partnership consisting of Geo. W. Freerks and said Martin C. Freerks, doing business as attorneys and counselors at law under said firm name at said city of Wahpeton, in this state. (4) That prior to the 7th day of October, 1901, said firm of Freerks & Freerks were employed and retained by one Mary Ann Jones to procure for her the cancellation and vacation of certain taxes levied during the years 1882, 1883, and 1884 by the taxing officers of said Richland county upon certain land in said county situate, and described as follows, to-wit, the east half of the northwest quarter (E. $\frac{1}{2}$ of N. W. Qr.) of section thirty-two (32), in township one hundred and thirty-six (136) north, of range fifty-two (52) west, and to procure for her the cancellation of a certain tax sale of said land for such taxes had and held in the month of October, 1885, and to procure for her the cancellation of certain certificates of tax sale issued thereon at the time of such sale by the treasurer of said county to the Dakota Investment Company; such certificates being for the aggregate amount of $31.32. That said Martin C. Freerks, as such member of said firm, assumed to act and did act as attorney for the said Mary Ann Jones in said matter from the date of such retainer and employment up to and including the 7th day of October, 1901. (5) That subsequent to such retainer and employment, and

prior to the 7th day of October, 1901, said Martin C. Freerks presented to Chas. E. Wolfe, Esq., an attorney at law of this court, a summons and complaint in the form and tenor of the copies hereto annexed marked Exhibits 'A' and 'B,' and made a part hereof, reference being had thereto for more certainty as to the contents, tenor, and effect thereof, and the same not being set forth at length for the sake of brevity. That at said time said Martin C. Freerks requested said Wolfe to sign and verify said complaint, and the same was so signed and verified accordingly. That thereupon said Martin C. Freerks at once served upon said Wolfe an answer in the form and of the tenor set forth in Exhibit C, hereto attached and made a part hereof. That at said time said Martin C. Freerks presented to the said Wolfe findings of fact, conclusions of law, and an order for entry of judgment in said action in the form and of the tenor set forth in Exhibit B, hereto attached and made a part hereof, and at said time requested said Wolfe to present the same to the Honorable W. S. Lauder, judge of the district court wherein said action was brought, and procure the signature of said judge thereto, to the end that judgment in conformity therewith might be entered thereon in said court. That the said Wolfe presented the same to said judge, procured his signature thereto, and in the presence of said judge delivered all said papers to said Martin C. Freerks, with directions to prepare a decree in conformity with the said findings, conclusions, and order. That the employment of said Wolfe in said action as attorney for the said Mary Ann Jones was merely nominal, was made by said Martin C. Freerks, and the acts done under such employment by said Wolfe were gratuitous, and for the accommodation of said Freerks." "(7) That thereafter, and on the said 7th day of October, 1901, said Martin C. Freerks made and prepared a judgment and decree in said action in the form and tenor of Exhibit E, hereto attached and made a part hereof, except that the same so made did not contain the signature of the clerk of said court or his deputy, the seal of said court, or the certificate of filing of said decree, as now shown upon said exhibit. That on said day said Martin C. Freerks presented said judgment and decree to the clerk of said court, and procured the signature of said clerk thereto, the affixing of the seal of said court thereon, and the filing in the office of said clerk all of the papers in said cause; he, said Freerks, paying the lawful fees therefor. (8) That thereafter, and on said day, said Martin C. Freerks presented said decree to one P. H. Stenerson, the county auditor of said Richland county, served a copy thereof on said auditor, and then and there demanded payment to him out of the funds of said Richland county of the sum of $66.30, representing said sum to be the amount of the tax certificates aforesaid, with interest at the rate of seven per cent. per annum from the date of the tax sale aforesaid. That at said time said Martin

C. Freerks represented to said auditor that as a matter of law said Richland county was absolutely liable to him for the payment of said sum of money by reason of the premises, and that said decree or judgment was a judicial determination by said district court of such liability, and was a direction by said court to said auditor to issue to him, said Freerks, his (said auditor's) warrant upon the treasurer of said county for the payment thereof. That thereupon the said county auditor, believing and relying upon such representations, and being induced thereby and by said decree, issued his warrant upon the treasurer of said county, directing him to pay to said Martin C. Freerks said sum of money out of the general funds in the hands of said treasurer, and delivered said warrant to the said Martin C. Freerks. That thereupon said Freerks received said warrant, presented the same to the treasurer of said county for payment, and demanded and received from said treasurer said sum of money in lawful currency of the United States, and took and retained and still retains the same. That thereafter, and on the 8th day of October, 1901, the proper officers of said Richland county demanded and caused to be demanded of said Martin C. Freerks the repayment to said county of said sum of money, but said Freerks refused, and still refuses, to repay the same, or any part thereof. (9) That each act and all of the acts of said Martin C. Freerks as hereinbefore set forth were done by him with the intent and object on his part to procure from the said county of Richland said sum of sixty-six dollars and thirty cents, although he (said Freerks) well knew he was not lawfully entitled thereto. That all of said acts were by him done knowingly, corruptly, and willfully, and in disregard of his duties as an attorney of this honorable court, and were a gross abuse of the confidence reposed in him as an attorney. Wherefore the undersigned, as informants, pray that the conduct of said Martin C. Freerks as an attorney and counselor at law in relation to the subject-matter hereinbefore set forth may be investigated, and such action taken as may, in the judgment of this honorable court, seem meet and proper in the premises. Chas. E. Wolfe. Edward Engerud. B. G. Tenneson."

The complaint in the action of Mary Ann Jones against M. C. Freerks, which is annexed to the foregoing accusation—excluding formal parts—is as follows: "(1) That the plaintiff now is, and at all the times hereinafter specifically referred to has been, the owner of the following described real estate, to-wit, the east half of the N. W. quarter of section 32, in township 136 north, of range 52 west. (2) That the plaintiff became the owner of said premises during the month of July, 1901, by making final proof of her homestead right thereof before the United States land office at Fargo, North Dakota, and that during said month of July, 1901, she received the final receiver's receipt from said land office, and that the same was duly recorded in the office of the register of

deeds in and for Richland county, North Dakota. (3) That during the years 1882, 1883, and 1884, while the title to said premises stood in the United States, the said premises were listed for taxation, and that a pretended assessment was made thereof, but that no taxes were ever paid thereon. (4) That during the year 1885, and in the month of October of said year, a sale of land for delinquent taxes was held in Richland county, and that at said sale a pretended sale of the premises hereinbefore described was made by the treasurer in and for said county. (5) That a pretended sale of said premises was made to the Dakota Investment Company for pretended taxes claimed to be due upon said premises for the years hereinbefore referred to, and that the said county treasurer issued to said Dakota Investment Company tax receipts and tax-sale certificates amounting together to the sum of $31.32. (6) That thereafter, and during the month of September, 1901, the said Dakota Investment Company transferred, assigned, and delivered to the defendant herein said tax receipts and certificates, and that said defendant is now the owner and holder thereof. (7) That said pretended back taxes appear on the records in the office of the county auditor in and for Richland county, and constitute a cloud upon the plaintiff's title to said real estate. Wherefore plaintiff demands judgment and decree of this court canceling said pretended taxes and the certificates and receipts, the evidence thereof of record, and decree that said taxes were and are absolutely void. Chas. E. Wolfe, Plaintiff's Attorney."

The material part of the answer to said complaint is as follows: "Answering the complaint of the plaintiff herein, the defendant admits each and every allegation, matter, and thing in said complaint contained. M. C. Freerks, Attorney pro se."

Upon said complaint and answer the district court made the following findings of fact and conclusions of law:

"Findings of fact: The above-entitled action having been brought before the court by consent of the parties thereto upon the complaint of the plaintiff and the admission of the allegations contained therein by the defendant, Chas. E. Wolfe, Esq., appearing for the plaintiff, and M. C. Freerks, Esq., appearing on his own behalf, and the court having considered the allegations contained in the plaintiff's complaint, and being duly advised in the premises: Now, therefore, it now makes and files the following findings of fact and conclusions of law: (1) That the allegations contained in the plaintiff's complaint are true.

"Conclusions of law: (1) That the taxes referred to in the said complaint were at the time of the pretended levy thereof, and now are, absolutely void. (2) That the plaintiff is entitled to a decree adjudging and decreeing said taxes, and the receipts and certificates therefor issued, to be absolutely null and void, and decreeing that the same be canceled of record, for the reason that at the time of

the levy of said taxes, and all of them, said land was not taxable, title thereto being in the United States.

"Let judgment be entered accordingly. By the Court. W. S. Lauder, Judge."

The judgment as entered by the deputy clerk of the district court, excluding the title of the action, is as follows:

"The above entitled cause having come before the court on the 7th day of October, 1901, upon the complaint of the plaintiff and the admission of the allegations thereof of the defendant, and the court having adopted the allegation of said complaint as its findings of fact, and having specially found that the allegations of said complaint are true, and the court having made its conclusions of law from such findings of fact, and having ordered judgment to be entered herein: Now, therefore, on motion of the plaintiff's attorney, Chas. E. Wolfe, Esq., it is considered, adjudged, and decreed that the taxes referred to in said complaint, and the certificate and receipts and evidence thereof, be, and they hereby are, declared absolutely null and void, for the reason that at the time of the pretended levy thereof, and at the time of the issuance of such certificate and receipts, the premises described in the complaint were owned by the United States, and that the same were not taxable, and the said taxes, tax-sale certificate, and tax receipts, and each and all of them, are hereby ordered canceled of record; and the defendant is entitled to have the amount thereof, together with interest thereon at the rate of 7 per cent. per annum from the date of the tax sale described in the complaint, refunded out of the county treasury upon an order therefor from the ·county auditor. Witness the Honorable W. S. Lauder, Judge of this Court, and my hand and seal of this court, this 7th day of October, 1901. H. C. N. Myhra, Clerk of said Court, by C. A. McKean, Deputy."

In this proceeding the answer of the accused to said accusation is prolix, and many of its averments have become immaterial in the light of the evidence and the conceded facts, and therefore the same will not be set out at length. While the answer embraces a qualified general denial, it nevertheless raises no issue of fact as to the principal acts and transactions which furnished the grounds of the charge and control the case. The following facts are uncontroverted: The plaintiff in the action of Mary Ann Jones against M. C. Freerks is the owner of the real estate described in the accusation herein. Taxes were assessed against said land by the authorities of Richland county in the years 1882, 1883, and 1884, and the land was sold for such taxes in the year 1885, and a tax certificate was issued upon such sale to the purchaser, and such certificate was thereafter transferred by the purchaser to a corporation, the Security Improvement Company, and that said corporation had the tax certificate in its possession at its office in the city of Grand Forks, N. D., on or about the 17th day of September, 1901, and about said date said corporation was in the hands of a receiver;

that the accused in said month of September purchased the tax certificate of the representatives of said corporation at Grand Forks, paying $25 therefor out of funds belonging to the firm of which the accused was a member, and the certificate was thereupon assigned and delivered to the accused, and he or his firm then and there became the owner thereof by such purchase and delivery. It is conceded that the complaint, answer, findings of fact, conclusions of law, and the judgment entered thereon in said action in which Mary Ann Jones was plaintiff and the accused herein was defendant were one and all drawn by the accused. It is further conceded that said Charles E. Wolfe gratuitously, and as an act of professional courtesy extended to the accused, signed and verified the complaint, and that, after an answer to the complaint was served by the accused on said Wolfe, that he, the said Wolfe, went before the district court, and upon the complaint and answer procured the judge's signature to the findings and order for judgment. It is also conceded that, after so obtaining the signature of the judge, said Wolfe delivered all the papers in the action, consisting of the summons, complaint, answer, and findings, to the accused herein, and did so with the understanding that the accused would personally attend to the matter of procuring the entry of judgment in the action. Said Wolfe was not present when the judgment was entered, nor was he consulted with reference to the form or contents of the judgment, but, on the contrary, the same, as entered, was framed by the accused, and was entered by the deputy clerk at the instance and upon the personal request of the accused. It is also admitted that after the findings and order for judgment were signed and delivered to the accused, but before any decree was framed or entered by the clerk (and upon the suggestion of Judge Lauder that it would be proper in such a case to notify the state's attorney of the pendency of the action and to serve that officer with a copy of the papers in the action), the accused thereupon attempted to serve the papers in said action, except the decree, upon the state's attorney for Richland county, but said attorney at that time declined to accept service of the papers. Immediately after such refusal the accused went to his office, and framed the decree, and still later in the same day caused it to be entered by the deputy clerk. The accused testified as follows: "I then went back to the office, and drew the decree as it appears in the record, and incorporated therein the provisions for the refundment of the money as near as might be in the language of the present statute, being of the opinion that that would follow as a necessary conclusion." It is further conceded that upon the presentation to the county auditor of the original papers (including the decree) in the case of Mary Ann Jones against M. C. Freerks the auditor directed his deputy to draw orders on the county treasury for the amount of the tax in question, with interest from the date of the tax sale at the rate of 7 per cent. per annum, amounting to $66.30. This was done, and on

the following day the auditor delivered the orders to the accused,. and upon their presentation by the accused the same were paid by the county treasurer out of the county funds. It appears also by uncontroverted testimony that before the accused purchased the tax certificate he sought the advice of a number of reputable attorneys upon the advisability of such purchase, and that they all, without exception, advised that it would be safe to make the purchase, for the reason that, in the opinion of such attorneys, the county of Richland would be compelled to refund the amount represented by the tax certificate to its holder, and the fact was. that the government owned the land at the time the taxes were levied and when the sale was made, and for many years thereafter. It is further true that the accused testified, in effect, that he bought the certificate in the belief that the claim represented by the same was. a valid claim, and legally enforceable against Richland county. This testimony, we think, is not impeached; either directly or indirectly, and hence we shall act upon the assumption, in disposing of the case, that the accused, at the time of his purchase of the tax certificate, entertained the belief that the amount represented by the same could be collected from Richland county. Now does the testimony warrant the conclusion that the accused has ever at any time changed his views on this feature of the case, or that he now entertains any other or different views as to the legality of the claim, or as to its collectibility from the county?

It further appears that within a day or two after the accused received said amount out of the county treasury its repayment was demanded of him by different representatives of Richland county, and that the accused has at all times refused, and still refuses, to return the money to the county until his right thereto has been adjudicated upon by a competent court; but the accused has at all times expressed a willingness to facilitate an early determination of the question, and has invited a suit for that purpose; but, so far as appears, no action has been instituted against the accused for the recovery of the money received on account of the tax certificate. But the evidence establishes the further fact that in the interval between the purchase of the tax certificate by the accused and the institution of said action in behalf of Mary Ann Jones the accused made certain attempts to obtain the money from the county on the tax certificate, and procure its cancellation upon the records, without resorting to judicial proceedings to accomplish such purposes. With this end in view, interviews were had by the accused with the state's attorney, and also with the county auditor. But these interviews were unavailing, and the county commissioners to whom the matter was presented by the accused did not allow the claim, but deferred action thereon. On the day the action was brought, or on the preceding day, the state's attorney, who had been looking the matter up, informed the accused "that he would have a hard time in collecting those taxes from the county board." This con-

clusion of the state's attorney was based upon the theory that the county would not refund taxes illegally assessed prior to 1890, and he so informed the accused. The county auditor also gave the accused the same information. The auditor testified, in answer to a question asked him by the accused, as follows: "I remember you were in the office there on several occasions before that I am speaking about in reference to the taxes, and I told you that any taxes prior to 1890 the county commissioners would not entertain for a moment. Q. And didn't I call your attention to the irregularities in the 1885 sale? A. I think you did. I think there was irregularity in several instances in those back years." It clearly appears that as a result of his interviews with county officers the accused became convinced that the certificate would not be canceled upon the tax books, nor the money be paid out voluntarily by such officials, and that he must, therefore, resort to judicial proceedings to accomplish these purposes. On this point he testified as follows: "I went back to the office of the state's attorney, and told him that I would withdraw my application to the board for the refundment of that money, and have an action instituted against me in accordance with the facts, declaring the taxes void, so that Mrs. Jones could get her money; and, if any proceedings were necessary between me and the county thereafter, I would not waive my rights, so that I would still be in position to bring suit if it were necessary." Accordingly a suit was instituted, in which Mr. Wolfe, at the request of the accused, and as an act of courtesy, represented the plaintiff, Mrs. Jones, and the defendant appeared in person in his own behalf.

It is undisputed that the firm of which the accused is a member was employed by Mrs. Jones to collect a balance due her from a firm of loan agents through whom she had obtained a loan of $800, and secured the same by a mortgage upon the land in question. The loan agents refused to pay over to her the full amount due on account of such loan, and held back the sum of $214 therefrom, and refused to pay the same over until the cloud upon the title to the land caused by said taxes, tax sale, and certificate should be canceled, and vacated of record. There is no evidence that Mrs. Jones gave any specific directions to her attorneys as to the mode or manner to be pursued in removing such cloud upon the title or in obtaining the $214. So far as appears, that matter was left open, and there is no evidence that Mrs. Jones directed any suit to be brought, or any money to be invested in or about the matter of procuring the money due her from the loan agents on account of the loan. Nor does the accused make any such claim. His position is, however, that he was in good faith acting in the interests of a client when he purchased the tax certificate and invested the funds of his firm in the same. The corporation from whom the

certificate was purchased was in the hands of a receiver at the time of the purchase. Upon this feature the accused testified as follows: "Q. What was your purpose in buying up the tax certificate? A. So as to prevent bringing a lawsuit. The company was in the hands of a receiver, and I didn't know the receiver, and I thought it was cheaper to buy those taxes, and to get them out of the way in that way, than to let this matter drag by bringing a suit, which would necessarily hang up Mrs. Jones' $214 until such action could be tried, which would not be until the latter part of the last term of court held in this county, being a court case. Q. Was your object in buying up those certificates for your own profit, or to facilitate and assist in the settlement of Mrs. Jones' matter? A. That was the only reason. Q. To facilitate settling the matter up for Mrs. Jones? A. Yes; and, having put in some money there, I tried to get it back. Q. The money you put in was Mrs. Jones' money, not firm money? A. No, it was not her money." In another place he testifies: "I went back to the office of the Security Improvement Company, and made him an offer to buy the taxes for myself, because I thought that I could handle it better than to have the taxes assigned to Mrs. Jones." Counsel have animadverted upon the act of purchasing the tax certificate, and causing the same to be transferred to the accused, and doing this without authority from Mrs. Jones, and also with a view, in part, to a personal profit to himself or his firm. With regard to this feature it is due the accused to state that nothing in this record indicates that the accused intentionally acted in any way adversely to his client's interest. In fact, as a result of the steps taken in the premises by the accused, the wishes of his client were directly promoted. Through the action taken by Mr. Freerks, the cloud was removed from the title to Mrs. Jones' land, and as a direct result of such removal the balance due her from the loan agents was obtained, and promptly remitted to her by her attorneys. Nor is there any suggestion in the record that Mrs. Jones is not entirely satisfied with all that has been accomplished in her interests by her attorneys. Nevertheless, we think that the purchase of the tax certificate without authority was hasty and injudicious action in an attorney, and this not merely because it placed the interest of attorney and client in antagonism, but especially so as the purchase of the certificate, so far as appears, was not reported to Mrs. Jones, and she was not given an opportunity to assume the ownership of the certificate, nor permitted to receive the profit which resulted from the financial venture. It was, we think, the duty of the accused to call the attention of his client to the fact that there was an opportunity of buying the certificate at a discount, and then permit her to decide whether she would take the venture or refuse to do so. The information came to the accused directly in the course of his professional employment, and in such cases an attorney cannot legitimately withhold any information from his client

which may be of value to him. Much less should the attorney suppress the information, and seek a personal advantage from the same, as appears was done in this case. It has been said that "an attorney cannot accept interests conflicting with those of his client. Any deviation in this respect may expose him not only to an action for damages on the part of his client, but to discipline on the part of the court." See Weeks, Attys. at Law, § 271. In section 268, Id., the following language is employed by the same author: "Attorney and client sustain to each other the relation of trustee and cestui que trust, and their dealings with each other are subject to the same intendments and imputations as obtain between other trustees and their beneficiaries." We therefore, upon the facts in this record, cannot permit this feature of the conduct of the accused to pass without notice, nor without the censure of this court.

We turn now to the specific charge against the accused, and that upon which the conclusion reached by the court in this proceeding must finally rest. The accusation, roughly stated, consists of a charge of fraudulently procuring the entry of a judgment in the district court in the case of Mary Ann Jones against M. C. Freerks, which judgment, it is claimed, was, as to its fraudulent features, wholly unwarranted by any adjudication made by the court in that action, and for the entry of which no order was ever made or signed by the judge of said district court. It is further charged that said fraudulent feature of the judgment was framed and caused to be entered in the judgment book by the accused for the sole and only purpose of promoting his own pecuniary interests, and that the interests of his client, Mary Ann Jones, were not advanced or promoted in the least by the entry of so much of said judgment as is fraudulent. The order signed by the judge of the district court, so far as the same is now material, was in the following language: "The allegations contained in the plaintiff's complaint are true. Conclusions of law: (1) That the taxes referred to in said complaint were at the time of the pretended levy thereof, and now are, absolutely void. (2) That the plaintiff is entitled to a decree adjudging and decreeing said taxes and the receipts and a certificate therefor issued to be absolutely null and void, and decreeing that the same be canceled of record, for the reason that at the time of the levy of said taxes and all of them said land was not taxable, title thereto being in the United States. Let judgment be entered accordingly." It is true that the relief authorized by this order was, and quite properly, embodied in the decree as framed by the accused and entered in the judgment book. But the decree went further, and introduced another highly important feature, which is not found in the order for judgment. The added feature of the judgment is couched in the following words: "And the defendant is entitled to have the amount thereof, together with interest thereon at the rate of 7 per cent. per annum from the date of the tax sale described in the complaint, refunded out of the county treasury,

upon an order therefor from the county auditor." It is conceded that the auditor, to whom the judgment was exhibited, acted upon this last-mentioned feature of the judgment in issuing and delivering the orders upon which the accused obtained the money out of the county treasury, and the evidence clearly shows that the auditor would not, in the absence of a mandatory judicial decree, have issued any order upon the treasury for the refundment of these taxes, or any other taxes assessed prior to the enactment of the revenue law of 1890. In fact, the law under which the accused now claims that he was entitled to a refundment does not authorize a county auditor to draw any order of refundment on the treasury. See Comp. Laws, § 1629. This section provides that the "county is to save the purchaser harmless," and ultimately holds the treasurer and his bondsmen responsible; but nowhere in the statute is there a suggestion that the auditor, of his own motion, can intervene, and issue a refundment order as a means of saving the purchaser harmless. In the absence of an express authorization to do so, the indemnity provided for in said section 1629 could lawfully be obtained only by the action of the county commissioners, and in this case it clearly appears that the commissioners were unwilling to act, and the accused had been repeatedly advised by county officials that the taxes would not be paid voluntarily by the action of the county board or on the initiative of any county official. Therefore the inference cannot be avoided that the accused, in framing this obnoxious feature of the judgment and in exhibiting it to the auditor, did so advisedly, and with the specific purpose of fraudulently using the same as a means of drawing out of the treasury the sum of $66.30, which sum, whether legally due him or not,—a point not decided in this case,—he well knew would not have been paid to him voluntarily by said officer, or any of the county officers, or paid at all, except in obedience to a judicial mandate requiring in plain terms such payment to be made. In fact, the district court itself would have been without authority, upon the facts stated in the complaint, to direct the county auditor to issue the orders which were issued by him; and it could not have lawfully done so even in a case where the right of the defendant to a refundment under section 1629, Comp. Laws, had been regularly adjudicated by the court. The right of an auditor to draw an order upon the treasury without previous action by the commissioners is exceptional, and never exists except as a result of legislation giving the authority in express terms. In this case, where the claim arises under section 1629, no such legislation exists, and the accused well knew that fact; at least he well knew that it would be practically impossible to obtain the money out of the treasury without first obtaining a judgment in terms requiring the refundment to be made.

Under such a state of facts this judgment was fabricated, and caused to be entered. It served the purposes of the accused only

too well. In obedience to its apparent, but utterly false and spurious mandate, the auditor, being deceived and imposed upon, issued the orders, and delivered them to the accused, as the fruits of a gross deception, practiced alike upon the court and its officers and upon the auditor. By this false instrument, purporting on its face to be the solemn judgment of a court of record, the accused in this proceeding was enabled to realize at once upon a claim against the county which had never been litigated or adjudicated upon by the court, or presented for adjudication. It is quite true, and we shall take account of the fact, that the accused believed, and had plausible grounds for believing, that he had a claim against Richland county capable of legal enforcement. But this fact can have weight only in mitigation of his offense. It does not alter the lamentable fact that the accused fabricated a judicial decree, and caused it to be entered,—a decree not warranted by the order for judgment, and one which imposed upon the clerk of the court, and which was, in its essential aspect, a deception practiced upon the court,—and this with the sinister purpose of drawing money out of the county treasury in a mode and manner not authorized by any law, and in violation of the established procedure regulating the framing and entry of judgments in the district court. This conduct, in our judgment, not only clearly violates the ethics of the profession, but it also evinces a degree of moral turpitude in the accused which this court can neither overlook nor condone. Before an attorney can be admitted to practice at the bar in this state, he is required to take the oath prescribed by section 211 of the state constitution, and in doing so he swears that he "will faithfully discharge the duties of the office of" an attorney at law. In this case there can be no question that this oath has been disregarded by the accused. Again, we find that the duties of an attorney under the statute must be measured by a high standard of moral rectitude. Under subdivision 3 of section 427, Rev. Codes 1899, an attorney is bound "to employ, for the purpose of maintaining the causes confided to him, such means only as are consistent with truth, and never seek to mislead the judges by any artifice or false statement of fact or law." The punishment denounced upon attorneys and counselors for deceit or collusion is specified in section 428, Id., which reads: "An attorney and counselor who is guilty of deceit or collusion or consents thereto, with intent to deceive a court, judge or party to an action or proceeding is liable to be disbarred and shall forfeit to the injured party treble damages to be recovered in a civil action." As has been seen, the deceit in this case was practiced upon the district court in procuring the entry of a judgment which was fraudulent, and the same act was a deceit practiced upon the judge of the court in entering a judgment never authorized by the judge. Moreover, the judgment as entered represents a gross deceit practiced upon a brother attorney, who, at the solicitation of the accused, had consented to act as

attorney for the plaintiff in the action in procuring the order for judgment. Mr. Wolfe thereby assumed an official relation in the case as attorney for plaintiff, and became responsible to the district court for the conduct of the case in accordance with law and the rules governing practice and procedure in district courts. Nevertheless, a judgment was entered in the action which was fraudulent, and this result was brought about by the direct act of the accused, who intervened after a proper order had been procured by Mr. Wolfe, and delivered to the accused, as the basis for the entry of a proper judgment. While Mr. Wolfe is entirely free from any wrongdoing in this matter, he is none the less, on the face of the record, the attorney of the plaintiff, and is, upon the face of the papers made responsible for the entry of the judgment, and for all its parts and features. It is perfectly clear that the mischief precipitated by the entry of the judgment is directly traceable to the purchase of the subject-matter of the litigation by the accused when acting as attorney for the plaintiff. Such an act, when done without authority, is highly reprehensible in an attortorney. See 3 Am. & Eng. Enc. Law (2d Ed.) p. 335. The judgment is double in character, and attempts to afford double relief. It attempts to further interests which were essentially antagonistic in contemplation of law. The accused, as owner of the tax certificate, legally occupied the same antagonistic relation to the plaintiff which, before such purchase, was occupied by the owner and assignor of the certificate. No attempt was made by the accused to defraud his client, but, on the other hand, his purchase of the certificate led directly to the perpetration of the fraud. After becoming owner of the certificate, the next step was to cause an action to be instituted, in which the accused was in fact the real representative of both parties to the suit; and this position, always equivocal and dangerous when occupied by an attorney, was assumed in this case to serve interests other and in addition to those of Mary Ann Jones; i. e., the personal interests of the accused. It is but just to the accused to add that when the case of Mary Ann Jones was presented to the district court for determination both Mr. Wolfe and the judge of the district court knew and understood the fact to be that Mr. Freerks intended to use the judgment as a means of bolstering a claim against the county of Richland for the refundment of the taxes in question. It was in fact for this reason that the judge directed Mr. Freerks to serve a copy of the papers then before the court in the action upon the state's attorney. But this fact does not excuse or tend to excuse the act of deceit involved in preparing a judgment which was not authorized by the order of the court, and one which could not have been lawfully rendered upon the facts alleged, or upon any other facts which could have been truthfully alleged, in the complaint. No facts would have authorized a judgment directing the auditor to draw the orders.

One word further must be added upon a feature of the oral argument made by the accused in this court, and also vehemently urged by his attorney in his brief filed in this court. The accused and his attorney have used extreme language in their attempts to cast reflections both upon Mr. Wolfe and Judge Lauder on account of the interest manifested by them in procuring the institution and prosecution of this proceeding in this court. The motives of Mr. Wolfe and Judge Lauder are characterized as sinister and malevolent, and they are directly charged with malicious and revengeful motives in pressing this matter to a hearing in this court. We desire to say that this charge is not sustained by the evidence in any degree whatever. The nature of the acts committed, and the direct consequence which resulted from the same, could not be overlooked either by the presiding judge or by the attorney who was also a victim of the fraud. Judge Lauder would have been fully justified in so doing if he had personally directed a member of the bar of his court to file an accusation in the district court against Mr. Freerks, and we think it was an act of delicacy on his part in directing the informants to file the accusation in another court than that over which he presided. Under such circumstances this court can have no sympathy with the unprofessional attempt made in behalf of the accused to besmirch the presiding judge of the district court. Nevertheless, as a matter of practice, we are clear that the informants, in filing the accusation in this court, acquired no additional right or authority to do so from the order directing it, which was made by the lower court. The accusation here, therefore, stands upon the individual action and initiative of the attorneys who filed the same in this court. In filing the accusation the attorneys have acted in accordance with their professional duty. But we desire to say, in the interests of a sound practice, that accusations of this kind appear in this court with unwelcome frequency. While this court has undoubted jurisdiction to discipline members of the bar, the fact remains that it should not, unless in exceptional cases, be called upon to sit as a nisi prius court in this class of cases. The policy of the statute clearly authorizes a different practice. See especially section 437, Rev. Codes 1899. That section, to be fully effectual, may require amendment, but while it stands we can entertain no doubt that it is the duty of district courts to shoulder their share of the responsibility of passing upon this class of cases. The grounds of the charges in this case occurred in the district court, and came to the knowledge of that court; and hence, under section 434, Id., that court had a right to require the accusation to be filed in that court, and such a course, in our opinion, would be much better practice than that pursued.

It remains only to announce the conclusions of the court. There are some circumstances of mitigation in this case, chief among which we place the fact that the accused in all that he did apparently acted in the honest belief that he was legally entitled to receive the

amount which he actually obtained from the county treasury. In other words, we credit Mr. Freerks with entertaining the honest belief (whether well grounded or not we do not attempt to decide) that the tax certificate which he owned represented a claim against the county which was legally enforceable. We consider this fact in mitigation, and therefore shall not inflict the full punishment of disbarment, which might legally be imposed in this case under the evidence. We have concluded to direct the suspension of Martin C. Freerks from the practice of law in all courts of this state for an indefinite period of time, which period, however, is limited as follows: The accused or his attorney will be permitted on the first day of the second regular term of this court which convenes in the year 1903 to move in this court for the vacation of the order directing his suspension from practice as an attorney at law. Upon the presentation of such motion this court will direct the vacation of such order upon terms and conditions following: If it shall, when said motion is made, satisfactorily appear that within 30 days after the date of the order of suspension Mr. Freerks paid into the hands of the treasurer of Richland county said sum of $66.30, which we hold was fraudulently obtained by him, and if at that time no verified complaint has been filed in this court charging the accused with violating the terms of the order of suspension, we shall, upon such showing, vacate such order. The clerk of this court is directed to enter an order in substantial conformity to this opinion.

All the judges concur.