IN THE MATTER OF THE APPLICATION FOR DISBARMENT OF J. E. BRYANS, OF MOHALL, NORTH DAKOTA, a Member of the Bar of This Court, and to Revoke the Certificate Issued to Him by This Court.

(204 N. W. 9.)

**Attorney at law — duty to court.**

1. An attorney who verifies a complaint, alleging that a certain bank is the assignee of the proceeds of an insurance policy and files a brief in the County Court in support of such contention, when he knows as a matter of fact that such bank has no interest in the policy or the suit, violates his duty as an attorney under ¶ 3 of § 794 of the Compiled Laws of 1913.

**Attorney and client — attorney making misrepresentations to client regarding settlement, guilty of deceit.**

2. An attorney who settles a lawsuit for $4000.00 and represents to his client

52 N. D.—43.

that the settlement was for $3200.00, and on that basis settles with the client for $1,600.00, being one-half of the sum alleged to have been recovered, is guilty of deceit, as defined in § 795, Compiled Laws of 1913.

Opinion filed May 25, 1925.

Attorney and Client, 6 C. J. § 50 p. 591 n. 69; § 56 p. 597 n. 11, 15, 24; § 93 p. 612 n. 52.

Original proceeding for the disbarment of J. E. Bryans.

*F. J. Murphy*, for the prosecution.

*Palda & Aaker*, for respondent.

JANSONIUS, District J. This is an original proceeding in this court for the disbarment or suspension of J. E. Bryans, a regularly licensed attorney of this court.

Charges have been filed against respondent looking to his disbarment or suspension as an attorney. The matter was referred to Hon. Thomas H. Pugh, one of the Judges of the Sixth Judicial District, with directions to take such evidence and make findings and conclusions. Thereafter return was made to this court, including a transcript of all the evidence taken, the original exhibits offered in evidence, and findings of the referee.

Ten specific charges were considered by the referee. The evidence as to Specifications 1, 2 and 3 is incomplete, and clearly the burden of proof has not been sustained.

Considerable evidence was received upon Specifications 4 and 5. It is charged in these specifications that two actions were commenced against the National Union Fire Insurance Co., in favor of Anna E. Shaw and one in favor of Henry H. Westlie, to recover for alleged losses upon insurance policies. The evidence shows that respondent was never employed by these parties, nor had he ever consulted with them. Respondent, however, explains his conduct by showing that a large number of actions were commenced by him against this insurance company for various policy holders which actions he had obtained from one William Clifford, of Mohall, who was connected with respondent in the capacity of making contracts with claimants for the prosecution of their claims. Respondent testified that the said Clifford turned over to him a list of claimants, a purported copy of which was received in

evidence, and that he in turn handed the list to his stenographer with instructions to draw complaints.

While the evidence clearly shows that the actions were commenced wholly without authority, it is not sufficient to satisfy us that the respondent did so with the intent to defraud the insurance company or the policy holders, nor is the evidence sufficient to warrant us in holding that the respondent knowingly made false oath in the verification to the complaints in these cases that he was the attorney for the respective plaintiffs. But while we approve the findings of the referee on these specifications, we condemn as unprofessional the practice of a lawyer, associating himself with an agent whose business it is to secure prospective clients. Stirring up litigations has always been recognized as unprofessional, and was indictable under the common law.

No evidence was adduced relative to Specification 6 and it will not be considered.

Regarding Specification 7, Judge Pugh concluded that the respondent had wilfully violated his duty as an officer of this court. The facts with reference to this charge are substantially as follows:

Respondent instituted an action in behalf of one M. T. Johnson against the National Union Fire Insurance Co. While this action was pending, the Security State Bank of Mohall sued Johnson upon a note for $600.00 and garnisheed the insurance company. The Mohall State Bank claimed an assignment of the insurance policy, appearing by respondent as attorney, and was by order of the court, dated May 10, 1918, interpleaded in the garnishment proceedings. The loss was adjusted at $1019.20, and this sum deposited with the clerk of court. The facts were stipulated, and the case determined in favor of the Mohall State Bank.

The evidence shows that this insurance policy had been assigned by Johnson to the Mohall State Bank July 2, 1917, while the garnishee action was commenced on January 11, 1918.

Respondent filed a brief with the county judge, in which he says that his client Johnson had assigned all his interest in the money to the Mohall State Bank and that he had from that time no cause of action against the Insurance Company; that the action should have been maintained in the name of the bank, and for that reason the action

was settled and the money, except the attorney's fees, was all left with the clerk of the district court.

He also verified the complaint in the county court on which he swore that Johnson had assigned all his interest in the money to the Mohall State Bank. This view was urged upon the county court orally and by written brief and he was successful in obtaining an order for judgment from the court decreeing the money to be the property of the bank.

The complaint in intervention, signed by respondent, wherein it is alleged that the Mohall State Bank is the owner of the money, is dated May 3, 1918, and the brief referred to above is dated May 14, 1918.

After this bank failed, respondent filed a claim for this money with the receiver, claiming that he was the owner of this money under an assignment dated March 12, 1918, signed by Johnson, and approved by the Mohall State Bank. Thus it appears that during all the time respondent was claiming the money for the Mohall State Bank as its attorney and actually did obtain a judgment and decree for the money he himself held an assignment of it and immediately upon the closing of the bank asserted his claim under such assignment.

The referee found that at the time the complaint in intervention was made and verified, the Mohall State Bank had no interest in the funds deposited, and the respondent must have known that the statements contained in the complaint were untrue, and the verification false, and in so doing he wilfully violated his duty as an officer of this court. A careful review of all the evidence satisfies us that regarding this specification no other conclusion could be reached.

It may be true, as argued by counsel, that it did not make any material difference whether this money belonged to the Mohall State Bank or to respondent, since there was no conflict between them, but the fact remains that the verification was false, and must have been known by the respondent to be false, and regardless of whether anyone was damaged, the court was deceived and an order for judgment in favor of the Mohall State Bank was obtained, when as a matter of fact it was not interested in the fund, and not entitled to such an order.

Specification 9 also concerns an insurance policy. The evidence shows that one Julia E. Cunningham retained respondent and another attorney to prosecute a claim for insurance upon the life of her deceased husband against the New York Life Insurance Co. in the sum of

$4000.00. The fees agreed upon were 50% contingent upon recovery. There is a dispute as to the terms of the contract relative to expenses of counsel, and also as to whether or not it was in writing. Mrs. Cunningham testified that the contract was oral, while respondent thinks it was in writing, but no written contract was produced.

Suit was commenced and the claim was afterwards settled for $4000.00. Mrs. Cunningham testified by deposition that respondent represented to her that the settlement with the insurance company had been for $3200.00, and on that basis she was paid $1600.00. No account of expenses in connection with this litigation was kept, but respondent and the other attorney associated with him each kept out $200.00. Later respondent settled with Mrs. Cunningham by paying her $500.00, of which sum $400.00 was the balance claimed by her and $100.00 for expenses incurred by her in recovering the balance due.

Respondent testified that he thought this contract regarding contingent fee was in writing. Mrs. Cunningham testified positively that it was oral. The alleged written contract was not produced which fact corroborates Mrs. Cunningham's theory that it was oral.

The attorneys each kept $1,200 of this amount. Respondent's portion was represented by a cashier's check issued by the Union National Bank of Minot for $800.00 and he received $400.00 in cash. Mrs. Cunningham was given a cashier's check on the same bank for $1,600.00, dated the same day.

The terms of this contract may not be so material. If it was oral a misunderstanding could easily result. The important question is: Did respondent represent to Mrs. Cunningham that settlement with the insurance company had been made for $3200? She testified positively that such representation was made, and that she received the $1600.00 upon such representation. The testimony of Mrs. Cunningham is not directly denied by respondent.

It appears that no account of expenses in connection with this litigation was kept, which fact, together with the fact that respondent later settled with Mrs. Cunningham by paying her $400.00 and $100.00 for expenses, corroborates her testimony and supports the findings of the referee that respondent did not exercise that fidelity towards his client that is required of an attorney at law.

Our conclusion as to this specification sustains the findings of the referee, namely, that the respondent was guilty of deceit in this transaction with Mrs. Cunningham.

Specification 10 is an alleged irregularity growing out of a bankruptcy matter. Respondent represented one D. G. Thompson in a bankruptcy proceeding. Among the debts scheduled was one in favor of Robert Whiting for $2200.00, with an endorsement of $500.00 credit, which was purported to have been secured by chattel mortgage. The chattel mortgage was witnessed by respondent.

It is the contention of the prosecution that respondent secured the execution of the notes and mortgage for the purpose of padding the indebtedness owing by Thompson, and that respondent had Thompson execute the chattel mortgage for the purpose of protecting Thompson's personal property from his creditors.

At the first hearing before the Referee in Bankruptcy Whiting testified regarding this indebtedness, and stated under oath that he and Thompson had a settlement; that Thompson owed him $1100.00, and gave him a note and crop security; that he learned of the giving of the chattel mortgage from Thompson in October, 1922; and that the mortgage was not drawn up at his request. Later, at another hearing, he testified that a $520.00 note was the only note he had against Thompson. He testified that respondent told him to testify about the $1100.00 note, and in answer to a question he stated "He said to tell that I had a note for $1100.00 and also one for seven hundred and something the total would make eighteen hundred or so."

A careful examination of the evidence shows that Thompson was indebted to Whiting in a sum not exceeding $552.00.

The referee found, and the testimony shows, that Whiting testified falsely at the bankruptcy hearing at Minot before the Referee in Bankruptcy. The referee also found that he so testified, if not on the suggestion, at least with knowledge on the part of the respondent.

There is a flat contradiction in the testimony on this specification. Whiting is a confessed perjurer, and his testimony must be closely scrutinized. Standing alone it should not be given much weight, but there are some circumstances tending to show that respondent knew or should have known the true facts in the case. The fact that Whiting

was to be a witness in the bankruptcy proceeding, and was at the office of respondent immediately before going to Minot to testify, makes it seem unreasonable that respondent failed to discuss with him the nature of his testimony. Nevertheless, both Thompson, who was also in the office, and respondent denied that the matter was discussed.

As we have heretofore indicated, the only direct evidence that Whiting testified falsely at the instance and solicitation of respondent is the testimony of Whiting himself, and Whiting is a confessed perjurer.

This specification is the gravest charge of all as it involves subornation of perjury, which in this case would be a felony. If this charge were sustained by clear and convincing evidence absolute disbarment should follow. An attorney guilty of a crime so heinous is unfit to represent clients in a tribunal whose function it is to administer justice.

After reviewing the testimony, we may say it is far from satisfactory but in the absence of corroborating evidence, we do not feel justified in upholding this finding. The burden of proof is on the prosecution to establish this charge by a clear preponderance of the evidence.

As to this specification, we find in respondent's favor.

We therefore approve the findings of the referee as to specifications 7 and 9 but not as to 10.

This leaves to the court only the question of penalty to be imposed. That under the charges and the testimony the respondent is a proper subject for discipline there can be no doubt.

It has been said (Re Lentz, 65 N. J. L. 134, 50 L.R.A. 415, 46 Atl. 761): "Courts have two objects in view in disbarment proceedings. One is to compel the attorney to deal squarely with his client; the other to remove from the profession a person whose misconduct has proven him unfit to be entrusted with the duties and responsibilities belonging to the office of an attorney."

Attorneys should never forget they are officers of the court; that justice under the law is all they have a right to seek for their clients, and all they are entitled to.

Among the duties of an attorney as set forth in § 794, of the Compiled Laws, are as follows:—

(1) To maintain the respect due to the courts of justice and judicial officers.

(3) To never seek to mislead the judges by an artifice or false statement of fact or law.

(6) Not to encourage either the commencement or continuance of an action or proceeding from any motive of passion or interest.

Section 795 provides as follows: "An attorney and counselor who is guilty of deceit or collusion, or consents thereto, with intent to deceive a court, judge or party to an action or proceeding is liable to be disbarred. . . ."

Section 800 provides that: "The license of an attorney or counselor at law may be revoked or suspended for either a violation of any of the duties of an attorney or counselor as prescribed by law."

Disbarment of an attorney is a very serious matter, and should be resorted to only when the evidence and circumstances are such as to show that the respondent is so lacking in character as to be unfit to be entrusted with the interests of others. The evidence shows that the respondent has been a licensed attorney for many years. Disbarment at this time in life would not only disgrace him in the eyes of his friends, but would also deprive him of his means of livelihood. For this reason disbarment should be resorted to only if the misconduct was gross, and the evidence clearly showed him unfit to be entrusted with a license.

While the evidence shows that the conduct of respondent was unethical, unprofessional, and in violation of his duties as a licensed attorney of this court, we feel that the extreme penalty should not be inflicted.

It is urged, on behalf of respondent, that heretofore he has had an honorable record in Renville County. He was several times entrusted by the voters with the responsible office of State's Attorney.

We believe if the license to practice be taken away from respondent for a period of time, he will come to a fuller realization of what it means to be entrusted with a license to practice the profession of law. The evidence, as we view it, does not show him so unfit and untrustworthy as to require a judgment of disbarment, and it is not at all likely that he will offend again. If he does it can be accepted as evidence of his unfitness, and disbarment will then follow.

Respondent will stand suspended for a period of one year from the practice of law before any of the courts of this State.

CHRISTIANSON, Ch. J., and NUESSLE, BURKE, and BIRDZELL, JJ., concur.

JOHNSON, J., being disqualified, did not participate; JANSONIUS, Dist. J., sitting in his stead.