In the Matter of the Application for Disciplinary Action against Henry H. HOWE, Jr., a Member of the Bar of the State of North Dakota.

GRIEVANCE COMMISSION, Petitioner,

v.

Henry H. HOWE, Jr., Respondent.

Civ. 9344.

Supreme Court of North Dakota.

Aug. 18, 1977.

See also N.D., 257 N.W.2d 413.

Gregory D. Morris, Bismarck, for petitioner.

Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for respondent; argued by Irvin B. Nodland, Bismarck, and Henry H. Howe, Jr., pro se.

PEDERSON, Justice.

This is an original disciplinary proceeding in this Court involving Henry H. Howe, Jr., who was admitted to practice as a lawyer in North Dakota in July 1973. Howe practiced in Valley City until he was recently employed at Minot by L.A.N.D. (Legal Aid for North Dakota).

After a complaint was served and filed in behalf of the Grievance Commission charging violations of Canon 1 of the Code of Professional Responsibility, and specifically Disciplinary Rules DR 1–101(A) and DR 1–102(A)(4)(5)(6), the parties stipulated the facts and the answer admitted the allegations but asked that there be no suspension ". . . for the reasons and explanations appearing in the record, because of the time that has transpired, and in the interest of justice." This Court then issued an order to show cause directing Howe to show why an order should not be issued adopting the findings, conclusions, and recommendations of the Grievance Commission that Howe's certificate of admission to practice law be suspended.

The pertinent facts as stipulated are:

I. When Howe applied for admission to practice law in North Dakota, in answer to the question, "Have you served in the armed forces of the United States?", he wrote, "Ruled 4–F, By Draft Board." A complete response would have included the fact that he did serve in the Armed Forces of the United States as a commissioned officer. In response to the directive to attach a "copy of military service discharge certificate," Howe drew a line through the directive. If the directive had been fulfilled by Howe, it would have shown that he was dismissed from the service under other than honorable conditions. Howe was subsequently classified 4–F.

II. When Howe applied for an insurance agent's license in 1975, he disclosed that his birth date was January 21, 1946, and that his place of birth was Berkeley, California. At the time Howe knew that his correct birth date was January 9, 1942, and that his place of birth was Arlington, Virginia. In the same application Howe indicated that from 1970 to 1973 he was in Berkeley, California, whereas in fact he had lived in numerous places during that period. He indicated that in 1973–1974 he was employed in Tuscon, Arizona, as a "staff attorney," whereas he had worked as a paralegal for the Office of Economic Opportunity.

III. When Howe made application for a North Dakota driver's license, he stated that he had not had a driver's license from any other state, whereas in fact he had had driver's licenses issued to him in several other states. In the same application Howe disclosed that his birth date was January 21, 1945, being aware that the correct date was January 9, 1942.

IV. Although Howe had been charged with tampering with a witness [see *State v. Howe*, 247 N.W.2d 647 (N.D.1976)], it was agreed that the matter was not to be considered in this proceeding. In oral argument we were informed that that charge had been dismissed on motion of the prosecution.

V. Howe was convicted by a jury of "failure to appear" and sentenced to six months at the State Farm. This conviction has recently been reversed [*State v. Howe*, 257 N.W.2d 413 (N.D.1977)]. In concluding that Howe was not guilty of "failure to appear after release," we said that this does not mean that we condone what he has done, especially in light of the fact that he is a lawyer and is held to the high standards of the Code of Professional Responsibility. The parties agreed that this Court may take judicial notice of all the files and records in that proceeding in disposing of this disciplinary matter.

The procedural rules applicable are those adopted by this Court on June 21, 1965 (effective August 1, 1965), not the North

Dakota Rules of Disciplinary Procedure (NDRDP) adopted by this Court on April 29, 1977 (effective July 1, 1977). The preamble to the applicable 1965 rules provides in part:

"Any acts committed by an attorney contrary to accepted standards of honesty, justice, or morality, including but not limited to those outlined in Section 27–14–02, North Dakota Century Code, and the violation of the duties outlined in Section 27–13–01, North Dakota Century Code, may constitute cause for discipline. Where such act constitutes a felony or misdemeanor, conviction thereof in a criminal proceeding shall not be a condition precedent to suspension or to the institution of disciplinary proceedings, nor shall acquittal necessarily constitute a bar thereto. Any violation of the canons of professional ethics, as adopted by the American Bar Association and affirmed by the State Bar Association of North Dakota, may also constitute cause for discipline."

It should not be necessary to repeat a description of Howe's conduct which resulted in the charge of "failure to appear after release" in violation of § 12.1–08–05, NDCC, which is contained in *State v. Howe,* 257 N.W.2d 413 (N.D.1977). It is obvious that only because Howe was an officer of the court did he have the opportunity to avoid police custody without first appearing in court. It is his conduct as an officer of the court with which we are now concerned—not whether such conduct constituted a criminal violation.

The Grievance Commission report adopted the provisions of the stipulation of facts as its findings, and therefrom concluded, inter alia, that the acts admitted constitute violations of the Code of Professional Responsibility of the American Bar Association, as affirmed by the State Bar Association of North Dakota and the North Dakota Supreme Court, and that Howe's actions are grounds for suspension from the practice of law in this State.

Canon No. 1 provides:

"A lawyer should assist in maintaining the integrity and competence of the legal profession."

The pertinent disciplinary rules provide:

"DR 1–101 Maintaining Integrity and Competence of the Legal Profession.

"(A) A lawyer is subject to discipline if he has made a materially false statement in, or if he has deliberately failed to disclose a material fact requested in connection with, his application for admission to the bar."

"DR 1–102 Misconduct.

"(A) A lawyer shall not:

. . . . .

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

There is some uncertainty whether the stipulation concedes that the acts admitted constitute a violation of Canon 1, and specifically DR 1–101(A) and DR 1–102(A)(4)(5)(6).

■ Where a false statement or failed disclosure in an application for admission to the bar has the effect of inhibiting the efforts of the bar to determine an applicant's fitness to practice law, it is material. We do not second-guess the effect of the true and complete application on the decision of the State Bar Board.

■ We find that when Howe deliberately failed to disclose his military record, he failed to disclose a material fact requested in connection with his application for admission to the bar and thus he violated DR 1–101(A).

■ We find that Howe's deliberate misinformation to insurance and driver's license authorities of his date and place of birth, former places of residence, and former employment constitutes conduct involving dishonesty and misrepresentation, in violation of DR 1–102(A)(4).

■ Finally, we find that Howe's conduct in all of the instances, when considered together, constitutes conduct prejudicial to the administration of justice and that it adversely reflects on his fitness to practice law in contravention of the provisions of DR 1–102(A)(5)(6).

In *Application of Christianson*, 253 N.W. 2d 410 (N.D.1977), we said that the power of this Court to discipline lawyers is constitutional (§ 87 of Article IV, North Dakota Constitution), statutory (§ 27–14–01, NDCC), and inherent [*In re George*, 182 N.W.2d 868 (N.D.1971); *In re Bosch*, 175 N.W.2d 11 (N.D.1970); *In re Eaton*, 60 N.D. 580, 235 N.W. 587 (1931); and *In re Simpson*, 9 N.D. 379, 83 N.W. 541 (1900)].

In his argument opposing any suspension, Howe cites only two cases, both from California. *State Bar of California v. Rollinson*, 213 Cal. 36, 1 P.2d 428 (1931), involved the making of a false affidavit when applying for admission. Rollinson had practiced law in Indiana and, in 1922, a disbarment proceeding was instituted against him. Without any hearing on the merits, the proceeding was dismissed on October 4, 1924. In December 1924 Rollinson applied for admission in California and, in an affidavit, stated that no charges of unprofessional conduct or proceedings for disbarment had been filed against him. In 1930 the State Bar of California discovered that the affidavit was untrue and sought revocation of Rollinson's license to practice law in California. The matter was tried in the District Court of Appeal, where evidence of Rollinson's high character and professional standing was excluded. The California Supreme Court ruled that it was error to exclude that evidence and ruled that submission of the false affidavit did not constitute ". . . such a willful fraud on the part of the petitioner as would suffice to justify the revocation of his license to practice law . . . ."

A significant difference distinguishes *Rollinson* from the facts stipulated by Howe. The court found that Rollinson did not knowingly misstate the facts—in fact, Rollinson had specifically consulted the judge in Indiana, before whom he had been accused, and had been advised that the dismissal of the charges without a hearing amounted, in substance and effect, to such a withdrawal thereof as would place him in the position as though no charges had ever been made. See *State Bar v. Langert*, 43 Cal.2d 636, 276 P.2d 596, 599 (1954).

■ There may be other reasons which would justify an opposite conclusion if the *Rollinson* case had been before the North Dakota court. In *In re Olmstead*, 11 N.D. 306, 91 N.W. 943 (1902), our Court said, in a vaguely similar case, that the proof submitted as a basis for admission was "a gross and inexcusable act of deception" and that the admission was obtained by a "fraudulent suppression of facts." Honest belief that a fabricated, false instrument is legally justified may be a circumstance in mitigation. *In re Freerks*, 11 N.D. 120, 90 N.W. 265 (1902). See also, *In re Bryans*, 52 N.D. 673, 204 N.W. 9 (1925), and *In re Crum*, 7 N.D. 316, 75 N.W. 257 (1898).

The other case upon which Howe relies is that of *Hallinan v. Committee of Bar Examiners of State Bar*, 65 Cal.2d 447, 55 Cal.Rptr. 228, 421 P.2d 76 (1966). We think that reliance, too, is misplaced. Primarily, *Hallinan* dealt with questions relating to an unorthodox life-style and incidents of civil disobedience. Howe is not being disciplined because of his life-style and activism. "It is also important both to society and the bar itself that lawyers be unintimidated—free to think, speak, and act as members of an Independent Bar." *Konigsberg v. State Bar*, 353 U.S. 252, 273, 77 S.Ct. 722, 733, 1 L.Ed.2d 810, 825 (1957). Hallinan admitted most of the incidents while Howe failed to disclose facts or misstated facts which would connect him to his past. The two cases are alike only in that Hallinan, too, failed to disclose certain incidents from his past. The court said that either Hallinan misunderstood or had forgotten and so he was not "motivated by the belief that disclosure would harm his cause." Howe readily acknowledged in oral argument that he was motivated to misstate or hide information because he did not want his past life to

be discovered. We do not mean to say that motive is always or never material. *In re Bryans*, 52 N.D. 673, 204 N.W. 9 (1925), indicated that if the court was deceived, other things did not matter.

Howe claims that *Rollinson* supports his position that when a number of years have "transpired" since the violation (referring to the false information in his application for admission to practice), suspension is not warranted. Although it is stated in *Rollinson* that "respondent's professional conduct during five years or more of practice had been without reproach," it does not appear that that is a critical part of the holding.

Our Court has not specifically ruled whether bar disciplinary proceedings are subject to limitations, prescription, laches or estoppel. See *In re Crum*, 7 N.D. 316, 75 N.W. 257 (1898). In a case where the acts complained of occurred more than 17 years before the proceedings were instituted, the Louisiana Supreme Court said that those defenses are purely statutory. *Louisiana State Bar Ass'n v. Theard*, 222 La. 328, 62 So.2d 501 (1953). The time during which a lawyer has provided his clients with highly professional service without reproach would certainly enter into a determination of both the type of sanction and the mitigation thereof.

Howe has not served the four years since his admission without reproach. The same type of untruthfulness or "cover-up" as was displayed in his 1973 application for admission to practice continued in his 1973 application for a North Dakota driver's license and in his 1975 application for an insurance agent's license.

■ Finally, Howe argues that he not be disciplined "in the interest of justice." We are, of course, interested in justice for a lawyer in disciplinary proceedings; however as we said in *In re Lyons*, 193 N.W.2d 462 (N.D.1971), our ultimate concern is for the public. See also, *Matter of Walton*, 251 N.W.2d 762 (N.D.1977). Conduct which might be considered acceptable for other persons may not be so for a lawyer. See, *Matter of Ivers*, 236 N.W.2d 887 (N.D.1975). See also, *In re Anderson*, 195 N.W.2d 345 (N.D.1972).

■ We believe that Howe has displayed a lack of a full realization of what it means to be entrusted with a license to practice the profession of law. It is possible that he may have come to realize the significance of the need to be meticulously truthful in his dealings with the Court. However, his argument that he was justified in covering up his activist past because he wanted to live a more serene life is unacceptable and indicates a lack of appreciation of the rule which prohibits deceit. Deceiving the Court is not justified by even a meritorious motive.

In mitigation Howe has furnished this Court with a great number of testimonials from clients, friends, and court officials which indicate that he is a competent, considerate and respectful lawyer, who works vigorously and enthusiastically for clients who often find it difficult to find lawyers who will represent them. We are not unmindful of the embarrassment, agony, and distress he, his wife and children, and his parents, have already had to endure during this proceeding and the criminal prosecutions referred to herein. We have weighed all of these matters and reach the unpleasant conclusion that Henry H. Howe, Jr., should have his license to practice law and his certificate of admission to the Bar of the State of North Dakota suspended for a period of at least ninety days, with his reinstatement to be governed by Rule 15, NDRDP. We further conclude that he must pay the costs of these proceedings to the Clerk of the Supreme Court.

ERICKSTAD, C. J., and VOGEL and SAND, JJ., concur.

PAULSON, J., deeming himself disqualified, did not participate.