[No. B024524. Second Dist., Div. Two. June 9, 1987.]

RENATE HECHT, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
DAVID FERGUSON et al., Real Parties in Interest.

## COUNSEL

Sidney M. Irmas, Green & Isaacs, Ron Frankel, Bruce Isaacs, Greene, O'Reilly, Broillet, Paul, Simon, McMillan, Wheeler & Rosenberg and Brian Panish for Petitioner.

No appearance for Respondent.

Irell & Manella, George T. Caplan, Jon W. Davidson and Sara D. Lipscomb for Real Parties in Interest.

## OPINION

ASHBY, J.—Petitioner Renate Hecht is the plaintiff in a superior court action in which she alleges that she was deprived of her interest in Amalgamated Software of North America, Inc. (ASNA), a corporation headed by real party David Ferguson. Hecht petitions for an order compelling the testimony of Attorney Abram Zukor about attorney-client conversations he had with Ferguson during the formation of the corporation. ■■■ The issue in this proceeding is whether Hecht presented to the respondent court evidence sufficient to bring these conversations within the "joint client" exception to the attorney-client privilege.[1] We hold that Hecht made a sufficient factual showing and the respondent court abused its discretion in denying Hecht's request to compel the testimony of Zukor.

### FACTS [2]

Hecht and Ferguson lived together in a meretricious relationship from August 1974 until the spring of 1982. Originally, they resided in Hecht's home in Topanga, but later moved into a home in Pacific Palisades jointly purchased by them. Ferguson worked as a consultant and developed computer software.

At the time Ferguson and Hecht began living together, Ferguson was employed by a private corporation, but wanted to start his own business. Ferguson and Hecht then started Ferguson Tool Co., which was headquartered at the couple's home.

Hecht testified at her deposition that Ferguson wanted to be free to pursue the technical side of the business, so she kept the books, wrote advertising, processed orders, and generally ran the business end of the venture.[3]

---

[1] Evidence Code section 962 codifies the exception as follows: "Where two or more clients have retained or consulted a lawyer upon a matter of common interest, none of them, nor the successor in interest of any of them, may claim a privilege under this article as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between one of such clients (or his successor in interest) and another of such clients (or his successor in interest)."

[2] We have reviewed the entire record presented in this case, including the depositions of petitioner Hecht and Attorney Zukor.

[3] In his opposition to the motion below, Ferguson makes a statement, complete with supporting references to Hecht's deposition, to the effect that Hecht "by her own admission was

Although Hecht refers to Ferguson Tool Co. as a "partnership" between herself and Ferguson, the company was actually set up as a sole proprietorship (Ferguson being the sole proprietor). Hecht's role in the operation of the business was nonetheless significant, and from every indication the income she derived from the company was not a salary, but a share of the profits.

Hecht alleges that in late 1981, Ferguson was on the verge of perfecting and marketing new software for the IBM System 34 computer. Ferguson obtained a commitment from outside investors, SCS Industries, Ltd., for an investment of $100,000.[4] However, SCS conditioned its investment on Ferguson's setting up a new corporation, which would provide a greater tax benefit to SCS. Hecht claims that she took out a loan to contribute $60,000 to the new company.[5]

Hecht (at his direction, according to Ferguson) contacted Attorney Zukor to find out what had to be done to set up the new corporation. During the formation stages of the corporation, Hecht and Ferguson met once with Zukor in his office and had several telephone conversations with him. In her declaration in support of the motion below, Hecht describes one of these three-way conversations as follows: "During this conversation, Mr. Zukor explained to David and I [*sic*] the need to pick officers, directors and shareholders of ASNA. David Ferguson then told Zukor that both he and I would be officers, that he would be President and I would be corporate secretary and that he and I were to be equal shareholders of ASNA."[6]

---

involved in running her separate real estate holdings and had but cursory knowledge of Ferguson's business affairs." A review of Hecht's deposition reveals the above to be a misstatement of the facts. Hecht did in fact have separate real estate holdings in which she was involved. However, the "cursory knowledge" of which Ferguson speaks refers only to the technical aspects of the business, as Hecht admittedly had little aptitude for computer programming. However, her knowledge of the business end of the venture was hardly "cursory."

[4] At least one of the investors had been a personal friend of Hecht for over 20 years.

[5] Ferguson claims that Hecht did not contribute any money at all to ASNA, and that the $60,000 was used to pay off Hecht's personal loans.

[6] Hecht has not been able to substantiate this claim, an omission which she explains as follows: "[A]t one point in time I was given a copy of some of Mr. Zukor's handwritten notes which I believe appeared on a xeroxed copy page of the ASNA bylaws. These notes substantiated the fact that David Ferguson agreed that he and I would be equal shareholders of ASNA. I kept a copy of these notes and other evidence together with many other important papers which I had accumulated over the years in a hidden compartment under my bed. Since David Ferguson and I lived together for over 8 years, he knew that I kept my important papers in this compartment under my bed. In January of 1983, while I was out of town, David Ferguson broke into my home and stole many of my personal possessions and also stole all of the papers I had kept in the compartment under my bed, including the copy of the handwritten notes which appear on the xeroxed page of the ASNA Bylaws. He also took the bed."

Hecht signed the initial organizational documents for ASNA, which listed her as an officer, director and proposed shareholder. The "Statement by Domestic Stock Corporation," signed by Ferguson, lists Ferguson as the chief executive officer and treasurer and Hecht as secretary. Ferguson and Hecht are the only two directors listed. The corporation's address was the couple's Pacific Palisades residence. The "Notice of Issuance of Shares" filed with the Department of Corporations, and signed by Ferguson, states that "shares of voting common stock have been or are proposed to be issued" to Ferguson and Hecht. No other names are listed.

By the early summer of 1982, the personal relationship between Ferguson and Hecht ended. In the fall of that year, Ferguson married Anne Bartley-Denniss (a defendant in this action and a real party in this proceeding). In March of 1983, Zukor redrafted ASNA's corporate documents. Hecht's name was deleted and the new Mrs. Ferguson's name was substituted in her place as a corporate officer and director. Shares of ASNA stock were issued in March 1983, and Hecht was not listed as a shareholder. (The only two shareholders were David Ferguson and his nephew, Joseph Atwill.) Hecht alleges that during discovery, she learned that a *second* corporation, Amalgamated Systems of North America had been formed and purported to own some of the assets in which Hecht claims an interest. Hecht alleges that both corporations have made considerable profits, none of which have been paid to her.

During the deposition of Attorney Zukor in July 1986, Hecht's attorney asked questions about the redrafting of the ASNA corporate documents. Ferguson's attorney interposed the defense of attorney-client privilege.

Hecht filed in the respondent court a document in the nature of a motion to compel, entitled "Motion to Permit Plaintiff's and David Ferguson's Joint Attorney to Testify on the Grounds of the Joint Client Exception to the Attorney Client Privilege." The respondent court held that Ferguson had waived his right to assert the attorney-client privilege as to those conversations at which Hecht was present, but that Hecht had otherwise not presented sufficient evidence to establish an attorney-client relationship between herself and Attorney Zukor.[7] We hold that this ruling was error.

## DISCUSSION

It is Ferguson's position that Zukor was his attorney, and his alone, and that Hecht's role was confined to that of "errand runner" for Ferguson.

---

[7] The respondent court's attitude toward the matter is evident from the following statement: "My wife has been in to see my lawyer a number of times, but the only reason she came along was because she was on the way to the hairdresser and needed a ride or something."

Zukor's billing records show that the work done on behalf of ASNA was listed on the "David Ferguson" client card, and it is undisputed that Ferguson paid all of Zukor's bills. ■ (The payment of attorney fees does not in itself determine the attorney-client relationship, but is only one indicia. *Lasky, Haas, Cohler & Munter* v. *Superior Court* (1985) 172 Cal.App.3d 264, 285 [218 Cal.Rptr. 205].)

Other than providing Hecht with billing records and statements, the deposition of Attorney Zukor was of little use in resolving the issue presented here, since the transactions which were the subject of this action occurred nearly five years before and consumed only a small portion of Zukor's busy practice for a short period of time. The deposition did reveal that Zukor was acquainted with Hecht long before Ferguson came on the scene, although it was not made clear whether or not he had ever formally served as Hecht's attorney.[8]

Ferguson's declaration in opposition to the motion below is confined to an allegation that Hecht's declaration is "self-serving," followed by Ferguson's statements as to how he perceived his professional relationship with Attorney Zukor.

■ We are thus left with factual allegations which Ferguson disputes but which, if true, entitle Hecht to relief here.

Regardless of the legal entity employed by Ferguson Tool Co., the facts as we perceive them are that the company was operated as a partnership by Ferguson and Hecht for several years. (Hecht's deposition testimony indicates that there were a number of "partners" in the venture, including herself and her former husband, Richard Hecht.) It was a business in which petitioner Hecht labored long and hard, a fact which Ferguson, in hindsight, has chosen to disregard. The situation was such that Hecht had every right to expect that the "partnership" between herself and Ferguson would continue with the new venture, ASNA. Although outside investors insisted upon the formation of a corporation for tax reasons, ASNA was formed as a statutory close corporation, which is akin to a partnership in its informality. (Friedman, Cal. Practice Guide-Corporations (Rutter Group 1987) § 3:234.) The only two "partners," according to the initial corporate documents, were Hecht and Ferguson.

■ It is the intent and conduct of the parties which is critical to the formation of the attorney-client relationship. (*Lasky, Haas, Cohler & Mun-*

---

[8] Ferguson once again misquoted deposition testimony when he stated, "Zukor himself testified at his deposition that Plaintiff did not retain him" with respect to the ASNA matter. The actual testimony was as follows: "Q. Was there ever a letter from Renate retaining you as her attorney for ASNA? A. No."

*ter* v. *Superior Court, supra,* 172 Cal.App.3d at p. 285.) With respect to the "intent" portion of that test, the parties here are at a standoff: Hecht believes that she was Zukor's client, along with Ferguson, and Ferguson insists that she was not. Attorney Zukor, through no fault of his own, could not resolve the dilemma (at least on the record presented here), for the parties confined his deposition to a review of documents and events.

■ We must therefore turn to the parties' conduct. The scenario portrayed by the evidence before this court is that Hecht and Ferguson participated for several years in a business to which Hecht contributed as would a partner. Hecht was not paid a salary, but a portion of the income generated by the business. When the new business venture arose, Hecht expected that the nature of her participation would be the same as it was with Ferguson Tool Co., an expectation which is supported by the fact that she and Ferguson were the only two names listed on the initial corporate documents for ASNA. It was proposed that Hecht would be a shareholder in the new business and (according to her) she contributed funds to the venture in accordance with that expectation. She was a participant in a number of conferences with the attorney who set up the corporation. Hecht was, in fact, more than an "errand runner"; her role (until it ended abruptly along with her relationship with Ferguson) was no different than that of a partner in the business.

We find persuasive the recent case of *Wortham & Van Liew* v. *Superior Court* (1987) 188 Cal.App.3d 927 [233 Cal.Rptr. 725] (review den. Apr. 1, 1987). In that case, a limited partner in a partnership filed an action for dissolution of the partnership and an accounting, declaration of constructive trust, injunctive relief and damages against the partnership. During discovery, the plaintiff, Clubb, sought to have the partnership's attorneys answer questions about matters alleged to be protected by the attorney-client privilege. It was Clubb's contention that two of his partners, Wortham and Van Liew, had breached their fiduciary obligations to him by surreptitiously transferring the partnership's only asset to a second partnership in which Clubb had no interest. The defendants "thereby deprived Clubb of his entire interest in the property to which he had devoted his full time and efforts for several months, as well as advancing expenses out of his own pocket. Further, by this transfer, defendants increased their proportionate interests in this property." (188 Cal.App.3d at p. 930.)

The superior court granted Clubb's motion to compel the testimony of the partnership's attorney relating to these transactions. The Court of Appeal denied the defendants' petition for a writ of prohibition to prevent enforcement of the discovery order. ■ The court concluded: "In the context of the representation of a partnership, the attorney for the partner-

ship represents all the partners as to matters of partnership business. Further, partners owe to one another, and general partners owe to limited partners, obligations of good faith, fair dealing. All partners are entitled to access to a wide range of partnership information, whether or not that information is generated under the aegis of the partnership's attorney. '. . . [T]he attorney-client privilege will not bar disclosure of matters related to a partnership business simply because such business was conducted through a law firm.' [Citation.] Only matters involving *purely private* or *personal interests* of one of the partners may be privileged." (*Wortham & Van Liew* v. *Superior Court, supra,* 188 Cal.App.3d at p. 932, italics in original.)

■ In this proceeding, Hecht is seeking a limited amount of information for a limited purpose: she wants to find out how it came to pass that she was "cut out" of any participation in ASNA. Based on the record presented here, Hecht has made a showing sufficient to bring herself within the "joint client" exception to the attorney-client privilege. She is thus entitled to compel the testimony of Attorney Zukor (to the extent that he can recall) as to attorney-client conversations with David Ferguson up to and including the point at which the ASNA corporate documents (including share certificates) were revised to delete Hecht's name. Obviously, this is not limited to conversations at which Hecht was present. (*Glacier General Assur. Co.* v. *Superior Court of Los Angeles County* (1979) 95 Cal.App.3d 836 [157 Cal.Rptr. 435].)

Let a peremptory writ of mandate issue directing the respondent court to vacate its order of October 17, 1986, denying the motion of plaintiff Renate Hecht "to permit plaintiff's and defendant's attorney to testify on the grounds of the joint client exception to the attorney-client privilege," and enter a new and different order granting the motion in accordance with the views expressed in this opinion.

This order is made final forthwith. Petitioner to recover costs.

Feinerman, P. J., and Hastings, J., concurred.