TAX DATA CORPORATION, a Colorado corporation, Appellant,

v.

Steven HUTT, individually and in his capacity as Treasurer for the City and County of Denver, Appellee.

No. 90CA1197.

Colorado Court of Appeals, Div. II.

Aug. 1, 1991.

Rehearing Denied Sept. 26, 1991.

Certiorari Denied Feb. 24, 1992.

---

Massey & Showalter, P.C., Michael G. Massey, Baker & Hostetler, Kenneth J. Burke, Denver, for appellant.

Patricia L. Wells, City Atty., Maria Kayser, Asst. City Atty., Denver, for appellee.

Opinion by Judge SMITH.

The plaintiff, Tax Data Corp. (the corporation), appeals the trial court order dismissing its application for an order to show cause and dismissing its complaint against the defendant, Steven Hutt, (treasurer), custodian of public records in the Treasury Department of the City and County of Denver. We affirm.

Since October 1989, the corporation has been in the business of providing its customers tax information on real property located in Denver. The corporation obtains this tax information through research of various public records, a number of which are located in the treasurer's office. The responsibilities of that office include collecting all of the city's taxes, handling the city's bank accounts and investments, and issuing the city's debt and bonds.

Current records regarding the collection and status of the various taxes are primarily kept in the treasurer's office on magnetic computer tapes. The information contained in these records is both received and stored via a main frame computer system which cross-references to the assessors' records, the city's occupational privilege tax records, and the city's confidential sales tax records. These records are annually transferred to microfiche.

Eight computer terminals are utilized in the treasurer's office to retrieve, display, and print the records which are kept on magnetic computer tapes. None of the computer terminals are designated for public use. In early 1990, however, when the corporation's representatives initially approached the treasurer's office to extract current tax status information on various parcels of property, office employees permitted such representatives access to the computer terminals.

In April 1990, the treasurer was apprised of the corporation's activities. He informed the corporation that its employees would no longer be permitted personal use of the terminals. Alternatively, he proposed that the corporation leave a list of the properties of interest to which the office would respond, without charge and in writing, within three days. In response, the corporation filed a request for public records under the Colorado Open Records Act, § 24-72-101, et seq., C.R.S. (1988

Repl.Vol. 10B) (Open Records Act). The treasurer replied, reiterating his position.

In early May 1990, the City Department of Revenue (department), under whose jurisdiction the treasurer operates, promulgated regulations governing public access to records open to inspection or copying under state and local laws. The regulations essentially codified the informal procedure instituted by the treasurer in April and provided in relevant part:

"3. *The public may not be allowed to use directly either its own or the data processing equipment of the Department of Revenue in inspecting or copying public records* ....

"4. Members of the public waiting in person at the counter to inspect or copy records shall be served, sequentially for up to and including three requests at one time ...; those inquiring by phone shall next be served up to and including three requests at one time ...; those inquiring in writing shall be last served ...

"5. Data shall not be provided orally with the assurance that it is correct.

. . . .

"6. Each copy of an uncertified document ... shall be provided at a cost of $1.25 each page. An additional charge of .50¢ shall be collected for each page certified to be a true copy of the original by the custodian.

. . . .

"8. The department will provide information meeting all lawful requests within a reasonable period of time, not to exceed three working days.

"9. Microfiche copy certified to be correct will be provided for $5.00 each schedule upon written request ... copies of official source documents shall be provided at a regular fee of $1.75 each certified page and $1.25 for uncertified pages....

"10. Requests made at one time for inspection for more than three schedules must be made in writing. A date and hour will be set within three working days during which the records will be available for inspection. Copies of the records shall be available upon payment of the regular fees....

. . . .

"12. When employees of the Department of Revenue are called upon to research data for an applicant for information or public records, [a] fee shall be imposed". (emphasis added)

In June, the corporation filed a complaint and application for an order to show cause in district court. The complaint alleged that the treasurer's proposal arbitrarily and capriciously denied the corporation the right personally to inspect public records pursuant to the Open Records Act. Consequently, the corporation requested an order directing the treasurer to permit inspection of the public records as the corporation had requested. Additionally, the corporation sought an order directing that the treasurer be personally assessed the corporation's costs and attorney fees.

After an evidentiary hearing, the district court, based on detailed findings of fact, concluded that the right to inspect under the Open Records Act did not require personal use of a terminal to view the public information displayed on the computer screen and that, thus, the issue the corporation's application presented related to the *manner*, not the *denial*, of access to public records which are electronically stored. The court further concluded that a person has been permitted to "inspect" public records which are stored in this format if the information requested can be provided either orally or by print-out from the computer screen.

Finally, inasmuch as the regulations permitted these forms of access and since there was evidence to establish the criteria set forth in § 24–72–203(1), C.R.S. (1988 Repl.Vol. 10B), the court discharged the corporation's order to show cause and dismissed the accompanying complaint. This discharge and dismissal form the basis of the corporation's appeal.

## I.

### A.

First, the corporation contends that the district court mischaracterized the issue

presented by its application as one relating to the "manner" of access to public records which are electronically stored. We disagree.

The corporation argues that the only form in which electronically stored public records can be made available for inspection is through the use of a computer, essentially because that is the format in which the public records are kept. Hence, it maintains that the department regulations, which explicitly bar public use of the treasurer's office computer terminals, operate to *deny*, rather than regulate, access to such public records.

Since the enactment of the Open Records Act in 1968, no Colorado case has specifically addressed the nature of the right to inspect public records which are, as here, almost exclusively maintained and stored electronically on magnetic computer tapes. A number of federal and state courts, however, have addressed this issue, and we conclude that two cases, *Dismukes v. Department of Interior*, 603 F.Supp. 760 (D.D.C.1984) and *AFSCME v. County of Cook*, 136 Ill.2d 334, 144 Ill.Dec. 242, 555 N.E.2d 361 (1990), frame the issue raised by the corporation's first contention of error.

In *Dismukes*, the plaintiff sought a copy of the Department of Interior's computer tape but received, instead, the same information on microfiche, the form in which the requested information was routinely made available to the public. In sanctioning the department's substitution in format, the court noted that the fundamental objective of the Freedom of Information Act, 5 U.S.C.A. § 552 (1977), is to insure public accessibility to the *informational content* of the public record. Thus, the public may not dictate the format in which the information will be provided. Moreover, the government agency, in discharging its obligation under the act, "need only provide responsive … information in a reasonably accessible form" which does not alter the content of the information. *Dismukes v. Department of Interior, supra. See also Seigle v. Barry*, 422 So.2d 63 (Fla.App. 1982).

In contrast, the Illinois Supreme Court, in *AFSCME, supra*, reversed a ruling of the appellate court which had approved the county's presentation of public information to plaintiffs in the form of a computer print-out, rather than in the form of a computer tape, as requested. The court construed the Illinois Freedom of Information Act (Illinois Act) to emphasize public *records*, not simply their informational content. Thus, the court held that requested information must be made available "in the form in which it is normally kept."

Neither of these cases is, of course, entirely analogous to the situation presented here in which the corporation does not seek a *copy* of the computer tape but direct access to the original magnetic database. However, these cases illustrate that the issue here turns on whether the basic purpose of the Open Records Act is one of public accessibility to the *informational content* of public records or is, instead, one of access to the *public records* in the form in which they are normally kept.

Citing §§ 24–72–201 and 24–72–203, C.R.S., (1988 Repl Vol. 10B), the corporation relies on the general assembly's use of the terms "inspect" and "public records" to assert that the latter articulates the purpose of the Open Records Act. For the following reasons, we disagree.

First, the Open Records Act was passed following a year-long study by a special committee of the Colorado Legislative Council. A review of this committee's report indicates that the committee's concern was public access to public *information*. Colorado Legislative Council, Research Publ. # 126, *Open Records for Colorado* (1967). Indeed, the committee repeatedly referred to public information and, in its *initial* finding and conclusion, stated that: "[I]ncreased awareness on the part of … the public has led to greater emphasis on the need for statutory guarantees of *public access to public information.*" (emphasis added)

Second, § 24–72–201 and § 24–72–203 specifically qualify the right to inspect public records. Section 24–72–201, which sets forth the policy of the Open Records Act,

declares "that all public records shall be open for inspection by any person at *reasonable* times." (emphasis added) And, unlike the Illinois Act at issue in *AFSCME, supra,* § 24–72–203(1) expressly authorizes *regulatory* limitations on the public's right of inspection. Moreover, this provision reserves to the custodian the determination of what *form* such regulatory limitations shall take.

■ Thus, we conclude that the basic purpose of the Open Records Act is to insure the public's access to *information* which is a matter of public record, in a form which is reasonably accessible and which does not alter the contents of the information. Reviewing the department's regulations in light of this basic purpose, we further conclude that the district court properly characterized the issue presented by the corporation's application as one relating to the *manner* of access to public records which are electronically stored.

The regulations specifically provide access to the electronically stored information in the following three formats: (1) oral communications with treasurer's office employees; (2) microfiche copies; and finally, (3) print-outs of information displayed on computer terminals. Clearly, all three formats provide the record information in easily understood form and, thus, are "readily accessible." *See Dismukes, supra.* Moreover, while there is a risk that information furnished verbally could lead to an unintentional alteration of content and information furnished on microfiche could be outdated, information furnished by computer print-out is subject to neither of these risks.

Information in a computer is analogous to information recorded in code. *See Seigle v. Barry, supra.* The computer decodes or translates the information and sends it *either* transiently to the computer screen or in a permanent form to the computer printer. Thus, a computer print-out is, for all intents and purposes, tantamount to a visual examination of the same information on a computer screen.

In sum, the regulations grant reasonable access to electronically stored information in a number of formats, at least one of which provides the information in a manner identical to viewing the same information on a computer screen. Accordingly, the regulations do not *deny* access to electronically stored public records, but merely regulate the *manner* of access to public *information.*

### B.

■ We note the corporation's tangential argument that the fee attached to a computer print-out invalidates the propriety of this format under the Open Records Act. Indeed, the Act does not expressly require the payment of a fee to exercise the right of inspection. However, the Legislative Council Research Publication reveals that this omission was intentional. An earlier draft had contained a provision for inspection "without charge" but this language was deleted because "it was felt that in some cases the custodian's rules and regulations might include the establishment of nominal fees." *See Open Public Records for Colorado, supra.* Thus, we conclude that the corporation's argument is without merit.

### II.

■ Next, the corporation contends that the district court erred in concluding that the regulations met the standards set forth in § 24–72–203(1). We disagree.

Section 24–72–203(1) provides, in relevant part:

"The official custodian of any public record may make such rules and regulations with reference to the inspection of [public] records as reasonably necessary for the protection of such records and the prevention of unnecessary interference with the regular discharge of duties of the custodian or his office."

There is abundant evidence in the record from which we conclude that the regulations meet the standards of § 24–72–203(1). Specifically, testimony established a legitimate concern for the security and integrity of the tax files, some of which contained confidential information. Likewise, direct access to the computer database itself is

fraught with dangers of alteration or obliteration, however unintentional. Moreover, the evidence established that not only were the number of office employees and computer terminals limited, but also that the corporation's requests in early 1990 were complex and numerous.

Thus, there is evidentiary support for the conclusion that the regulations are reasonably necessary for the protection of the records and the prevention of unnecessary interference with the discharge of the duties of the treasurer and his office. Accordingly, the district court's conclusion that the regulations met the criteria of § 24-72-203(1) was not in error.

## III.

The corporation also contends that the treasurer should have allowed the corporation to donate and install a "dummy" terminal and monitor screen in the treasurer's office for the inspection of the electronically stored records.

This contention is without merit. First, it is the *custodian*, not the public, who is authorized to make the regulations governing the right to inspect under the Open Records Act. Second, installation of a "dummy" computer presents the same integrity and security issues as those presented when the corporation is allowed personal access to the treasury office computer terminals.

## IV.

Finally, the corporation contends that it is entitled to recover court costs and attorney fees for the "denial" of access which occurred prior to the promulgation of the department's regulations in May 1990.

Inasmuch as the corporation has admitted in its brief that the regulations "rubber stamped" the treasurer's actions, and since we have found such regulations to be valid,

we perceive no basis to justify such an award.

The judgment is affirmed.

REED and ENOCH,* JJ., concur.