1997 ND 75

**JoAnn C. TOTH, Petitioner,**

v.

**DISCIPLINARY BOARD OF THE SUPREME COURT OF NORTH DAKOTA, Respondent.**

**Civil No. 960334.**

Supreme Court of North Dakota.

April 22, 1997.

James S. Hill (argued), of Zuger Kirmis & Smith, Bismarck, for petitioner.

Paul W. Jacobson (argued), Assistant Disciplinary Counsel, and Vivian E. Berg (on brief), Disciplinary Counsel, Bismarck, for respondent.

PER CURIAM.

[¶ 1] Assistant Attorney General JoAnn C. Toth appealed from a Disciplinary Board admonishment, under informal proceedings, for her "misrepresentation" and failure to honor a confidentiality clause in a settlement agreement. We conclude there is no clear and convincing evidence Toth committed a mis-

representation within the meaning of N.D.R.L.D. 1.2(A)(3), and we dismiss the complaint.

[¶ 2] Toth represented the State Board of Chiropractic Examiners (Chiropractic Board) in a professional disciplinary action brought against Dr. Jeffry T. Vendsel, a Grand Forks chiropractor. The Chiropractic Board sought to suspend or revoke Vendsel's license, alleging in its October 1993 administrative complaint:

5. On or between January 1989 and March 1993, the respondent engaged in unprofessional, dishonorable, or unethical conduct by willfully sexually abusing patients and committing acts involving moral turpitude. Dr. Jeffry T. Vendsel did engage in sexual acts with female patients. Such acts include caressing his patients['] breasts and buttocks, as well as participating in oral sex and intercourse with patients.

6. In February of 1993, Dr. Vendsel did willfully intimidate a patient by threatening to file a slander lawsuit against her if she discussed the sexual acts which had taken place between them.

Attorneys Shirley Dvorak and Ronald Galstad represented Vendsel in the administrative proceedings.

[¶ 3] In September 1994, the Board and Vendsel entered into a settlement agreement providing for a six-month suspension of Vendsel's North Dakota chiropractic license, followed by reinstatement if Vendsel met a number of conditions. The settlement agreement also contained a confidentiality clause negotiated by the parties' attorneys:

f. This Settlement Agreement is considered confidential except as otherwise provided by North Dakota Law and paragraph (g) of this agreement.

g. The suspension of Dr. Vendsel's license shall be reported by the Board in compliance with the ACA Rules of Ethics. That Dr. Vendsel will report the suspension to the State of Minnesota and if necessary, it will also be reported by the Board.

[¶ 4] In October 1994, Toth received telephone calls, forwarded to her office by the Chiropractic Board's secretary, from members of the Grand Forks media requesting information about the Vendsel matter. Toth visited with the Attorney General and Solicitor General before responding to any questions from the first caller, Rose Brunsvold, a reporter for a Grand Forks television station. Toth said "both agreed that under the open records law I could discuss information consistent with the settlement agreement, and/or I could release copies of the settlement." Toth then answered several of Brunsvold's questions, describing the allegations in the administrative complaint and the terms of the settlement agreement. In describing the allegations of the complaint, Toth told Brunsvold:

That conduct ranged anywhere from touching breasts and nipples to engaging in intercourse. Now I'm not saying that he did that, for example, engaged in intercourse with six of the victims, just that with six people the conduct was anywhere within that range.

[¶ 5] Toth referred reporters to the Grand Forks County State's Attorney regarding possible criminal charges against Vendsel. She also referred them to two attorneys who were representing a former patient of Vendsel in a civil action against him.

[¶ 6] On October 26, 1994, a Grand Forks television station ran the following story on its evening newscast:

Pat Sweeney: Good Evening. A Grand Forks chiropractor has had his license suspended for allegedly sexually abusing patients.

Rose Brunsvold: JoAnn Toth of the North Dakota Attorney General's office says six women complained to the State Board of Chiropractic Examiners that Dr. Jeffry Vendsel engaged in sexual abuse with six female patients or threatened to sue them for libel if they talked about what allegedly happened in his clinic at 2812 17th Avenue South in Grand Forks. Vendsel's license has been suspended for at least six months. In March he must meet several criteria in order to get it back. The complaints range from touching breasts to allegedly engaging in sexual intercourse. A civil law suit was filed against him for malpractice alleging sexual abuse against a

16 year old girl. It was filed in Grand Forks District Court in August but was settled out of Court in September. Dr. Vendsel could not be reached for comment today.

[¶ 7] Attorney Dvorak filed a grievance with the Disciplinary Board alleging Toth had "flagrant[ly]" violated the confidentiality clause of the settlement agreement. The matter was forwarded to a member of the Inquiry Committee West for investigation.

[¶ 8] Toth filed a response to the complaint claiming she did not violate the confidentiality clause because she "did not initiate contacts with" the press, but merely made appropriate responses "to inquiries from the press" concerning "open records which could rightfully be disclosed." An affidavit of a paralegal employed with the Attorney General's Office who was present during settlement negotiations said the parties understood the confidentiality clause to mean "we would not initiate any contact with the press, but would answer any questions the press asked us if they contacted our office." Attorney Galstad said in a letter to the investigator it was his "understanding of the agreement reached that Ms. Toth would not give out any information regarding this matter unless she received a request pursuant to the North Dakota open records laws and then she would only provide the appropriately requested materials. It was also my understanding that she would not give out any verbal information."

[¶ 9] The Inquiry Committee West found "Toth did not honor a confidentiality provision in a settlement agreement and that this was a misrepresentation" in violation of N.D.R.L.D. 1.2(A)(3), and determined discipline in the form of an admonition was the appropriate sanction. Toth filed a written request for Disciplinary Board review under N.D.R.L.D. 3.1(D)(8). In May 1996 the Disciplinary Board approved the decision of the Inquiry Committee West to issue Toth an admonition. We granted Toth's petition for leave to appeal to this Court under N.D.R.L.D. 3.1(D)(8).

[¶ 10] Both parties assume this Court's standard for reviewing the Disciplinary Board's decision to issue an admonition upon finding a misrepresentation in an informal proceeding is simply to decide whether the Disciplinary Board acted arbitrarily, capriciously, or unreasonably. N.D.R.L.D. 3.1(D)(8), relating to informal district inquiry committee investigations and procedures, says "[t]he determination of the board may be the subject of a petition for leave to appeal to the court, but leave will not be granted unless the complainant shows that the board acted arbitrarily, capriciously, or unreasonably." For the reasons which follow, we construe this provision to mean the arbitrary and capricious standard governs our initial decision to grant leave to appeal, and we apply it only in reviewing procedural aspects of the Disciplinary Board's decision, rather than in reviewing the substantive evidence relied upon to support imposition of disciplinary sanctions.

[¶ 11] Sanctions for violating the Rules of Professional Conduct range from disbarment or suspension to reprimand or admonition. *See* N.D.S.I.L.S. 2.0. The Standards for Imposing Lawyer Sanctions "are designed for use in imposing a sanction or sanctions *following a determination by clear and convincing evidence that a member of the legal profession has violated a provision of the North Dakota Rules of Professional Conduct.*" N.D.S.I.L.S. 1.3 (emphasis added). Although N.D.R.L.D. 3.5(C) requires clear and convincing evidence of misconduct only for "[d]isposition of formal charges," we believe it would be incongruous to apply a lesser burden of proof of professional misconduct in an informal disciplinary proceeding where, as here, serious misconduct is alleged to have been committed by an attorney. We will review the merits of this informal attorney disciplinary proceeding, like a formal proceeding, de novo on the record under a clear and convincing standard of proof. *See, e.g., Disciplinary Action Against LaQua,* 548 N.W.2d 372, 373 (N.D.1996).

[¶ 12] We granted leave to appeal because the procedural aspects of this case were, on their face, arbitrary and capricious. The Disciplinary Board approved the inquiry committee's finding that Toth committed a "misrepresentation" under N.D.R.L.D.

1.2(A)(3) in failing to honor the confidentiality provision of the settlement agreement, but merely issued an admonition as the form of discipline.

[¶ 13] An allegation of dishonesty, fraud, deceit or misrepresentation under N.D.R.L.D. 1.2(A)(3) is one of the most serious charges that can be brought against an attorney. *See, e.g.,* N.D.R.L.D. 4.1(C) (defining "serious crime" other than felony as any lesser crime involving misrepresentation, fraud, or deceit); *ABA/BNA Lawyers' Manual On Professional Conduct,* at 101:401–101:404 (1986) (*ABA/BNA Manual*). If a misrepresentation is found to have occurred, severe discipline is generally appropriate. *See Matter of Ellis,* 504 N.W.2d 559, 565 (N.D.1993); *Disciplinary Action Against Lochow,* 502 N.W.2d 252, 255 (N.D.1993); *Matter of Howe,* 257 N.W.2d 420, 421 (N.D.1977).

[¶ 14] An admonition is a form of discipline that can be given informally by a district inquiry committee. *See* N.D.R.L.D. 1.3(A)(5). An admonition is defined in N.D.S.I.L.S. 2.5 as

> discipline appropriate for misconduct that is of a nature that protection of the public does not warrant public discipline. Admonition is a form of non-public discipline that does not limit the lawyer's right to practice.

An admonition is a sanction for lesser misconduct than misrepresentation. *See ABA/BNA Manual,* at 01:609. The Standards for Imposing Lawyer Sanctions usually speak of admonitions as appropriate for a lawyer's isolated instance of negligent conduct. *See* N.D.S.I.L.S. 4.14, 4.24, 4.34, 4.44, 4.54, 4.64, 5.24, 6.14, 6.24, 6.34, 7.4. Under the N.D.S.I.L.S. 5.1 standards for failure of a lawyer to maintain personal integrity, which seems applicable under the allegations here, an admonition is only appropriate for conduct other than dishonesty, fraud, deceit, or misrepresentation "that reflects adversely on the lawyer's fitness to practice law." N.D.S.I.L.S. 5.14. There is an inherent inconsistency in the Disciplinary Board's finding of misrepresentation and issuance of an admonition, absent an explanation for the disparity between the serious misconduct found and the mild sanction imposed.

[¶ 15] The procedural problem in this case stems from use of informal proceedings and disposition by the district inquiry committee for a serious charge of attorney misconduct. *See* N.D.R.L.D. 3.1(D). The district inquiry committee, having found a misrepresentation by Toth, should have instituted formal proceedings, thereby affording Toth the full panoply of due process rights set forth in N.D.R.L.D. 3.1(E). *See Lashkowitz v. Disciplinary Bd.,* 410 N.W.2d 502, 506 (N.D.1987); *Matter of Disciplinary Act. Against Garcia,* 366 N.W.2d 482, 485 (N.D.1985). We conclude the procedure used here was arbitrary and capricious, justifying our grant of Toth's petition for leave to appeal.

[¶ 16] Upon our de novo review of this sparse record and the limited findings and conclusions of the Disciplinary Board by adoption of those made by Inquiry Committee West, we conclude there is no clear and convincing evidence Toth committed a misrepresentation by failing to honor the confidentiality clause in the settlement agreement.

[¶ 17] A "misrepresentation" is an "untruthful statement" of fact, *Thomas v. New York Life Ins. Co.,* 65 N.D. 625, 260 N.W. 605, 612 (1935), "which, if accepted, leads the mind to an apprehension of a condition other and different from that which exists." *Black's Law Dictionary,* at p. 1001 (6th ed.1990). *See also Howe,* 257 N.W.2d at 422–423. The Disciplinary Board had the burden of proving Toth made a misrepresentation by clear and convincing evidence. *See Disciplinary Board v. Gray,* 544 N.W.2d 168, 173 (N.D.1996).

[¶ 18] The confidentiality clause says the "Settlement Agreement is considered confidential except as otherwise provided by North Dakota law. . . ." North Dakota's open records law provides that, unless specifically exempted by law, all records of public or governmental bodies, boards, bureaus, commissions or agencies of the state are "open and accessible for inspection during reasonable office hours." N.D.C.C. § 44–04–18(1). *See also* N.D. Const. Art. XI, § 6; *Adams County Record v. GNDA,* 529

N.W.2d 830, 833 (N.D.1995). The settlement agreement was an open record accessible for public inspection under North Dakota law.

[¶ 19] The parties agree the Chiropractic Board cannot circumvent the open records law with a confidentiality clause in a settlement agreement. *See, e.g., Anchorage School Dist. v. Anchorage Daily News,* 779 P.2d 1191, 1193 (Alaska 1989); *Picton v. Anderson Union High School,* 50 Cal. App.4th 726, 57 Cal.Rptr.2d 829, 832–833 (1996); *Denver Pub. Co. v. University of Colo.,* 812 P.2d 682, 685 (Colo.Ct.App.1990); *SHOPO v. Soc. Of Professional Journalists,* 83 Hawai'i 378, 927 P.2d 386, 412–414 (1996); *Guy Gannett Pub. v. University of Maine,* 555 A.2d 470, 473 (Me.1989); *State ex rel. Sun Newspapers v. Westlake Bd. of Educ.,* 76 Ohio App.3d 170, 601 N.E.2d 173, 175 (1991); *Morning Call, Inc. v. Lower Saucon Tp.,* 156 Pa.Cmwlth. 397, 627 A.2d 297, 299–300 (1993); *Yakima Newspapers, Inc. v. City of Yakima,* 77 Wash.App. 319, 890 P.2d 544, 547 (1995); *Journal/Sentinel v. School Bd. of Shorewood,* 186 Wis.2d 443, 521 N.W.2d 165, 171 (Ct.App.1994). Nor does the Disciplinary Board assert Toth somehow failed to comply with the open records law by verbally conveying the contents of those records to reporters. *See, e.g., Tax Data Corp. v. Hutt,* 826 P.2d 353, 357 (Colo.Ct.App.1991) (regulation allowing treasurer's office employees to orally communicate public record information did not violate open records act).

[¶ 20] The Disciplinary Board instead focuses on an "implicit" agreement beyond the terms of the confidentiality clause. Relying on Attorney Galstad's letter about his "understanding" of the agreement, the Disciplinary Board argues the inquiry committee could properly have determined the confidentiality clause included an implicit agreement that Toth and the Chiropractic Board would not hold a news conference on the matter, would not give out any verbal information about the case, and would not provide anyone with any information beyond what was contained in the administrative complaint and settlement agreement. The Disciplinary Board asserts Toth, by providing information orally, and by providing information beyond what was contained in the administrative complaint and settlement agreement, misled Vendsel and his counsel and violated the implicit part of the confidentiality clause.

[¶ 21] Toth essentially agrees there was some type of implicit agreement beyond the express terms of the confidentiality clause, but asserts it was limited to the Chiropractic Board not initiating news media contacts regarding the Vendsel settlement agreement. This interpretation of the implicit agreement tends to comport with the specific language of the confidentiality clause limiting confidentiality to the "Settlement Agreement." The Disciplinary Board's broad interpretation of the implicit agreement essentially places a gag order on the Chiropractic Board from providing any open records information about the Vendsel matter, except a copy of the administrative complaint and settlement agreement, even if it possessed other open records information relating to the case. The legality and enforceability under the North Dakota open records law of such a broad implicit agreement is questionable. *See Anchorage School Dist.; Picton; Denver Pub. Co.; SHOPO; Guy Gannett Pub.; State ex rel. Sun Newspapers; Morning Call, Inc.; Yakima Newspapers, Inc.; Journal/Sentinel.* Under these circumstances, we conclude the Disciplinary Board failed to meet its burden of proving by clear and convincing evidence that Toth committed a misrepresentation or violated the confidentiality clause in the settlement agreement.

[¶ 22] There is no claim that anything Toth told reporters was false, or was information not contained in open public records. Of course, Toth, in keeping with the overall purpose of the confidentiality clause, could have refused to engage in conversations with members of the media to the extent that she did. But on this record, we conclude Toth's conduct did not constitute a misrepresentation and violation of the confidentiality clause.

[¶ 23] The complaint against Toth is dismissed.

[¶ 24] MARING, NEUMANN, SANDSTROM and MESCHKE, JJ., concur.

VANDE WALLE, Chief Justice, concurring in the result.

[¶ 25] Adhering to the wording of the agreement to keep the settlement confidential "except as otherwise provided by North Dakota Law," and recognizing the spirit and purpose of the agreement, Attorney JoAnn C. Toth might have declined to talk to reporters except to refer them to the written agreement itself and to make a copy of the agreement if requested. Article XI, § 6, N.D. Const. and section 44–04–18, NDCC, required no more. Those open-record provisions do not require the holder of the record to read to or discuss the record with reporters or the public. Discussing and answering questions about the record with a reporter is surely not prohibited by the open-record laws and might be the normal course of procedure absent an agreement to do otherwise. But, it was that discussion which permitted the reporter to quote Toth for whatever additional credibility and significance that might lend to the news story and which resulted in the complaint by Attorney Shirley Dvorak.

[¶ 26] Nevertheless, while Toth might have refused to do anymore than provide a copy of the record to the reporter, her conversation revealed no more than the agreement itself would reveal if Toth did no more than the law required, i.e., provide a copy of the agreement to the reporter.

[¶ 27] I therefore agree with the majority there is no evidence Toth is subject to disciplinary action for misrepresentation or for failing to honor the agreement. Not every case in which an attorney could have exercised better judgment results in disciplinary action.

[¶ 28] VANDE WALLE, C.J.