2015 ND 220

## In the Matter of the Petition of a Respondent Attorney Sandra K. KUNTZ, Petitioner

v.

## DISCIPLINARY BOARD OF THE SUPREME COURT OF NORTH DAKOTA, Respondent.

No. 20150086.

Supreme Court of North Dakota.

Aug. 25, 2015.

Ronald H. McLean (argued) and Peter W. Zuger (on brief), Fargo, N.D., for petitioner.

Brent J. Edison, Fargo, N.D., for respondent.

Kara J. Johnson (on brief), Disciplinary Counsel, Bismarck, N.D., for respondent.

PER CURIAM.

[¶1] Sandra Kuntz appeals from a Disciplinary Board decision affirming an Inquiry Committee decision to admonish her for violating N.D.R. Prof. Conduct 1.7 and 1.9 relating to conflicts of interest and duties to a former client. We conclude there is not clear and convincing evidence Kuntz violated the applicable rules of professional conduct, and we dismiss the complaint.

I

[¶2] Shaun Bergquist filed a disciplinary complaint against Kuntz, alleging she had a conflict of interest when she agreed in July 2012 to represent him in a proceeding to modify his parenting schedule

against his child's mother, Sara Wyrick, after Kuntz had consulted with his child's maternal grandfather, Paul Berger, in May 2011 about appealing the initial primary residential responsibility determination and received a $100 retainer to take the appeal.

[¶ 3] Kuntz's response to Bergquist's complaint stated she met with him for an initial consultation on June 18, 2012, to review his file for assessment of the merits and the procedure to modify his parenting schedule with Wyrick, also known as Hickey and formerly known as Berger. Kuntz asserted her normal practice for all initial consultations was to run a conflict check and advise the individual that she was meeting in a limited capacity to provide basic information for an informed decision on whether to proceed with retaining a lawyer. According to Kuntz, she clearly advised individuals during initial consultations that she was not their lawyer as a result of the consultation and she did not then agree to be their lawyer. Kuntz stated she was subsequently retained by Bergquist in July 2012 to represent him in his motion to modify his parenting schedule against Wyrick, and she prepared the case for a hearing.

[¶ 4] Shortly before a scheduled April 2013 hearing on Bergquist's motion, the district court, on motion by Wyrick, disqualified Kuntz from representing him in that proceeding because she had met with Berger in May 2011 about representation after the initial primary residential responsibility determination. The court explained: (1) "the purpose of the consultation [with Berger] was to determine whether Ms. Kuntz would represent the Defendant in an effort to change the custodial decision reached in the course of the first trial;" (2) "Berger paid a $100 consultation fee;" (3) "discussions included a retainer fee that Ms. Kuntz would require;"

(4) there were no subsequent contacts and "Defendant apparently decided she could not afford the fee or for other reasons did not respond;" and (5) Kuntz did not recall the consultation with Berger, but agreed that she routinely met with potential clients for consultations and charged an initial fee of $100.

[¶ 5] A bill from Kuntz's law firm identified a charge of $100 for an "initial consult ... re: Paul Berger ... for services rendered through 05/12/2011." Kuntz's handwritten notes from her consultation with Berger included a notation referring to "Berger Sarah/Paul" and "5–12–11 oc w/Paul Berger (Grandfather)." Kuntz's notes also stated "Shawn Bergquist—Been in hospital since May 8th—No idea when expected to get out of hospital"; "Mar–May [child] w/natural father"; and "Natural mom Sara—settling in Baker MT[,] Getting remarried[, and] Has job etc." This record also includes a handwritten note that Disciplinary Counsel asserts is from a telephone conference leading up to Kuntz's initial consultation with Berger. The record does not establish who transcribed the handwritten note, which references Paul Berger, Sara Berger, and Shaun Bergquist, and provides:

> re: custody
>
> 1 child 19 months [child's name]
>
> -Custody order in Dix
>
> -Child support order in Dix
>
> -Went to court, father got custody of child. Mother got visitation. Wants to fire current Attorney because he/she wont do anything further & mother wants to go back to court and fight for child.
>
> -Does not feel child is in safe environment father lives w/[paternal grandmother] who is an alcoholic & on ventilator & leaves child alone with her.
>
> $100 ic/conflict

TCT: Paul
  Scheduled May 9th @ 11:00 a.m.
  BA (fill in)

[¶ 6] Kuntz's response to Bergquist's complaint explained her procedure for determining whether her representation of Bergquist constituted a conflict of interest and her consultation with Berger:

Upon leaving [my former] Law Firm, I duplicated the case management database portion that logs all names for conflict checks including initial consults and transferred the data to an excel spreadsheet that was searchable to continue to check for potential conflicts.... As I advised the Court, I ran a conflict check at the initiation of Mr. Bergquist's consultation. That conflict check verified that I have never met with Shaun Bergquist or Sara Wyrick aka Hickey fka Berger. I did not search for conflicts among the names of collateral witnesses that subsequently became a part of the file beginning in November/December 2012 when Sara finally made an appearance and her father Paul Berger provided an affidavit. Through the time of this matter was brought before the Court April 8, 2013, I did not have an independent recollection of the consult with Paul Berger.

Subsequent to my dismissal [as counsel for Bergquist in the proceeding to modify the parenting schedule], I have obtained the notes from that initial consult with Paul Berger. The initial consult occurred May 12, 2011, and I have enclosed the notes for your review as Exhibit 8. I have no other documents as a result of that contact with Mr. Paul Berger. I have never met Sara Wyrick aka Hickey fka Berger. I did not obtain any information and therefore did not utilize any information that would have been confidential or adverse to the interests of Paul Berger or Sara Berger resulting from the initial consult. I did not form an attorney client relationship with Mr. Paul Berger. I did not have an express agreement for representation nor a reasonable expectation of representation or representation implied from the circumstances of that consult. As I outlined above, my normal practice for all initial consults is to run a conflict check. I am careful with conflicts and other ethical scenarios. I believe I have a good system in place to identify such conflicts but understand no system is without room for improvement. At every consult I advise the individual that I am meeting them in a very limited capacity to review their issue and provide basic information to make an informed decision whether to proceed with retaining an attorney whether it be my office or elsewhere. I clearly advise that *I am not their attorney as a result of the consult* and do not agree to become their attorney until review of the information and deadlines, if any, discussed in the initial consult, review and signature of a fee contract, and payment of a retainer in an amount determined within the consult.

[¶ 7] The Inquiry Committee found that before Kuntz represented Bergquist in the proceeding against Wyrick, she met with Berger to discuss Wyrick's case and Berger paid Kuntz a $100 fee for the consultation, which resulted in an attorney-client relationship for the period of the consultation and required Kuntz to treat Wyrick as a former client. The Inquiry Committee determined Kuntz violated N.D.R. Prof. Conduct 1.7 and 1.9 involving conflicts of interest and duties to a former client and offered her consent probation. Kuntz responded that her notes from the initial consultation with Berger did not disclose the exchange of any confidential information and she claimed she was not

precluded from representing Bergquist in a proceeding against Wyrick. Kuntz requested dismissal of the complaint, arguing four ethics opinions by the State Bar Association supported her request. *See* State Bar Ass'n of North Dakota Ethics Comm., Op. Nos. 05–04, 96–08, 96–05, 96–04.

[¶ 8] The Inquiry Committee thereafter issued an admonition, and Kuntz appealed to the Disciplinary Board. The Board disapproved the Inquiry Committee's decision to issue an admonition and remanded to the Inquiry Committee for additional investigation and to reconsider the offer of consent probation. The Inquiry Committee thereafter issued an admonition, finding:

> Kuntz violated Rules 1.7 and 1.9 N.D.R. Prof. Conduct, regarding conflicts of interest and duties to former clients, in that. Ms. Kuntz represented Shaun Bergquist (the father) in a child custody matter in which she had previously met with Paul Berger (the maternal grandfather) to discuss Sara Wyrick's (the mother's) case and had been paid $100 for the consultation. The Committee concluded that as a result of Mr. Berger's consultation with Ms. Kuntz, an attorney/client relationship was formed; accordingly, Ms. Kuntz had an obligation to treat Mr. Berger as a former client. The Committee further concluded that Ms. Kuntz breached that obligation when she represented a party in the materially adverse interests in the same or a substantially related matter. The Committee considered sanctions under Standard 4.3 N.D. Stds. Imposing Lawyer Sanctions. The Committee concluded that in light of the refund of unearned fees and other efforts to mitigate potential injury to Ms. Kuntz's former client, the appropriate discipline is an admonition under Standard 4.34. Therefore, Attorney Sandra K. Kuntz is

hereby issued an *ADMONITION* by the Inquiry Committee Northeast.

[¶ 9] Kuntz again appealed to the Disciplinary Board. The Disciplinary Board declined to act on the complaint, and this Court appointed a three-member special Disciplinary Board, which affirmed the Inquiry Committee's decision. Kuntz petitioned this Court to appeal the Disciplinary Board's decision, and this Court determined Kuntz made a sufficient showing to justify an appeal. *See Runge v. Disciplinary Bd.*, 2015 ND 32, ¶ 8, 858 N.W.2d 901; *Toth v. Disciplinary Bd.*, 1997 ND 75, ¶ 10, 562 N.W.2d 744.

## II

[¶ 10] We review the substantive evidence and merits of an informal disciplinary disposition de novo on the record. *Runge*, 2015 ND 32, ¶ 9, 858 N.W.2d 901; *Toth*, 1997 ND 75, ¶¶ 10–11, 562 N.W.2d 744. A violation of the rules of professional conduct must be established by clear and convincing evidence. *Runge*, at ¶ 9; *Toth*, at ¶ 11.

## III

[¶ 11] Kuntz argues the record is inadequate to determine whether there is clear and convincing evidence supporting an admonition. She claims Berger was her potential client under N.D.R. Prof. Conduct 1.18 and she was not prohibited from representing Bergquist in a case against Wyrick because Kuntz did not obtain from Berger any significantly harmful information that prohibited her from representing Bergquist. She also argues she followed ethics opinions issued by the State Bar Association, which support dismissal of the disciplinary proceeding against her.

[¶ 12] Disciplinary Counsel argues a lawyer-client relationship was established when Kuntz met with Berger on May 12,

2011, discussed Wyrick's parenting case, and charged Berger a $100 consultation fee for services rendered through May 12. Disciplinary Counsel argues Kuntz's conduct violated N.D.R. Prof. Conduct 1.7 and 1.9 relating to conflicts of interest and duties to a former client. Disciplinary Counsel argues Kuntz's conflict of interest is not excused by her reliance on ethics opinions issued by the State Bar Association and the proceedings complied with due process appropriate for an admonition.

[¶ 13] The disciplinary rules outline a lawyer's duties to a "former client" and to a "potential client." N.D.R. Prof. Conduct 1.9 and 1.18. The primary issue raised by the parties' arguments is whether Kuntz's consultation with Berger created a lawyer-client relationship and established duties to a "former client" under N.D.R. Prof. Conduct 1.9, or whether the consultation established duties to a "potential client" under N.D.R. Prof. Conduct 1.18.

[¶ 14] Rule 1.9(a), N.D.R. Prof. Conduct, describes a lawyer's duties to a "former client" and provides that a "lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing." Under N.D.R. Prof. Conduct 1.9(c), a lawyer who has formerly represented a client in a matter shall not use information relating to the representation to the disadvantage of the former client in the same or a substantially related matter except as permitted by the rules of professional conduct or when the information has become generally known.

[¶ 15] Rule 1.18, N.D.R. Prof. Conduct, strikes a balance between a client's right to protect communications made during a consultation before the actual retention of a lawyer, and a lawyer's right to freely represent a client without being restricted by consultations that do not ripen into an attorney-client relationship. The rule defines a "potential client" as a person who discusses with a lawyer the possibility of forming a lawyer-client relationship and describes a lawyer's duties to a "potential client" to not use or reveal "significantly harmful information" learned in the consultation except as would be permitted with respect to information of a former client. Under N.D.R. Prof. Conduct 1.18, a lawyer who is not retained by a potential client shall not represent another client in the same or a substantially related matter if the lawyer received significantly harmful information from the potential client unless the affected client and the potential client consent or the lawyer takes reasonable measures to avoid exposure to more significantly harmful information than was reasonably necessary to determine whether to represent the potential client and notice is given to the potential client.

[¶ 16] The comments to N.D.R. Prof. Conduct 1.18 describe parameters for the exchange of information during a lawyer's initial consultation with a potential client and explain:

It is often necessary for a potential client to reveal information to the lawyer during an initial consultation prior to the decision about formation of a client-lawyer relationship. The lawyer often must learn such information to determine whether there is a conflict of interest with an existing client and whether the matter is one that the lawyer is willing to undertake. Paragraph (b) prohibits the lawyer from using or revealing information, except as permitted by Rule 1.9, even if the client or lawyer decides not to proceed with the representation. The duty exists regardless of how brief the initial conference may be. A lawyer is not prohibited from revealing to an ex-

isting client that an opposing party has contacted the lawyer seeking representation.

■ In order to avoid acquiring significantly harmful information from a potential client, a lawyer considering whether or not to undertake a new matter should limit the initial interview to only such information as reasonably appears necessary for that purpose. Where the information indicates that a conflict of interest or other reason for non-representation exists, the lawyer should so inform the potential client or decline the representation. If the potential client wishes to retain the lawyer, and if consent is allowed under Rule 1.7(c), then consent from all affected present or former clients must be obtained before accepting the representation.

■ A lawyer may condition conversations with a potential client on the person's consent that no information disclosed during the consultation will prohibit the lawyer from representing a different client in the matter. If the agreement expressly so provides, the potential client may also consent to the lawyer's subsequent use of information received from the potential client.

■ Even in the absence of an agreement, under paragraph (c), the lawyer is not prohibited from representing a client with interests adverse to those of the potential client in the same or a substantially related matter unless the lawyer has received from the potential client information that could be significantly harmful if used in the matter.

[¶ 17] The Inquiry Committee said Kuntz's consultation with Berger created a lawyer-client relationship and she had an obligation to treat Berger as a former client under N.D.R. Prof. Conduct 1.9, which she breached when she represented

Bergquist, a party with materially adverse interests in the same or a substantially related matter. In *Disciplinary Bd. v. Giese*, 2003 ND 82, ¶ 17, 662 N.W.2d 250, we discussed criteria for the creation of a lawyer-client relationship:

In *Disciplinary Bd. v. McKechnie*, 2003 ND 22, ¶ 19, 656 N.W.2d 661 (quoting ABA/BNA Lawyers' Manual on Professional Conduct, at 31:101 (2002)), we said, "the lawyer-client relationship begins when the client acknowledges the lawyer's capacity to act in his behalf and the lawyer agrees to act for the benefit and under the control of the client." The existence of an attorney-client relationship does not depend on an express contract or the payment of fees, and may be implied from the parties' conduct. *McKechnie*, at ¶ 19. An attorney-client relationship is established when a party seeks and receives advice and assistance from an attorney on matters pertinent to the legal profession. *Matter of Petrie* [154 Ariz. 295], 742 P.2d 796, 800 (Ariz.1987). *See* 7 Am.Jur.2d *Attorneys at Law* § 136 (1997). The existence of an attorney-client relationship turns largely on the client's subjective belief it exists and looks to the nature of the work performed and to the circumstances under which confidences are divulged. *Petrie*, at 800–01; *Louisiana State Bar Ass'n v. Bosworth*, 481 So.2d 567, 571 (La.1986); *Matter of McGlothlen* [99 Wash.2d 515], 663 P.2d 1330, 1334 (1983). The attorney-client relationship and the prohibition of transactions with a client continue as long as the influence arising from the attorney-client relationship continues. *McGlothlen*, at 1335. *See Petrie*, at 801. *See also* 7 Am.Jur.2d *Attorneys at Law* at § 145. The existence of an attorney-client relationship is a question of fact. *Moen v. Thomas*, 2001 ND 110, ¶ 13, 628 N.W.2d 325.

[¶ 18] Here, Kuntz charged Berger $100 for her initial consultation with him. A lawyer-client relationship may be established without the payment of attorney fees. *Giese*, 2003 ND 82, ¶ 17, 662 N.W.2d 250; *Disciplinary Bd. v. McKechnie*, 2003 ND 22, ¶ 19, 656 N.W.2d 661; *Moen v. Thomas*, 2001 ND 110, ¶ 13, 628 N.W.2d 325. We initially consider the impact of the initial consultation fee on the creation of a lawyer-client relationship. In discussing the existence of a lawyer-client relationship, one court cited the nature of the services rendered, the circumstances under which an individual divulges confidences, and the individual's belief a consultation with a lawyer was for professional legal advice, but nevertheless said it believed payment for legal services was persuasive evidence that a lawyer-client relationship had been established. *Foulke v. Knuck*, 162 Ariz. 517, 784 P.2d 723, 726 (Ct.App.1989). Some courts, however, have recognized the payment of attorney fees is one indicia of a lawyer-client relationship, but is not, by itself, determinative. *State v. Dueker*, 346 S.W.3d 390, 394 (Mo.Ct.App.2011). *Hecht v. Superior Ct.*, 192 Cal.App.3d 560, 237 Cal.Rptr. 528, 530 (1987); *Breuer–Harrison, Inc. v. Combe*, 799 P.2d 716, 728 (Utah App.1990). In *Dueker*, at 394, the court said the "[m]ere payment of a fee without proof that the payor received legal advice or assistance from the attorney or that the attorney intended to provide the client with legal advice or assistance, does not show an attorney-client relationship." In *Hecht*, at 530–31, the court explained the intent and conduct of the parties were critical factors in establishing the creation of the lawyer-client relationship and the payment of a fee, by itself, was not determinative. *See also Breuer–Harrison*, at 728 (same).

[¶ 19] A recognized treatise on professional conduct explains that Model Rule of Professional Conduct 1.18, relating to duties to prospective or potential clients, is based on the *Restatement (Third) of the Law Governing Lawyers* § 15 (A Lawyer's Duties to a Prospective Client) (2000). 1 Geoffrey C. Hazard, Jr., W. William Hodes, Peter R. Jarvis, *The Law of Lawyering* § 23.02 (4th ed.2015). Comment g to *Restatement* § 15 discusses compensation for consultations with a prospective client and provides:

> In the absence of circumstances indicating otherwise, prospective clients would ordinarily not expect to pay for preliminary discussions with a lawyer. When a client-lawyer relationship does not result, a lawyer is not entitled to be compensated unless that has been expressly agreed or it is otherwise clear from the circumstances that payment will be required.

[¶ 20] We conclude the foregoing authorities are consistent with this Court's decisions on the creation of the lawyer-client relationship. *See Giese*, 2003 ND 82, ¶ 17, 662 N.W.2d 250; *McKechnie*, 2003 ND 22, ¶ 19, 656 N.W.2d 661. We conclude a lawyer may charge an initial consultation fee without necessarily creating a lawyer-client relationship and the payment of an initial consultation fee, by itself, does not establish a lawyer-client relationship. Rather, the existence of a lawyer-client relationship depends on the particular circumstances of the case, including the conduct of the parties, the circumstances of the consultation, the nature of information exchanged, and any agreements between the parties. *See Giese*, at ¶ 17; *McKechnie*, at ¶ 19.

[¶ 21] Here, Kuntz explained she advised potential clients during every initial consultation that she was meeting with them in a limited capacity and that she was not their attorney as a result of the consultation. She said she did not agree

to become a potential client's attorney until review of the information and deadlines, if any, discussed in an initial consultation, review and signature of a fee contract, and payment of a retainer in an amount determined during the consultation. She stated that during her initial consultation with Berger, she did not obtain or utilize any information that was adverse to the interests of Berger or Wyrick. She asserted she did not form an attorney-client relationship with Berger, and she did not have an express agreement for representation, a reasonable expectation of representation, or representation implied from the circumstances of that consultation. Kuntz's consultation notes and the handwritten notes from a telephone conference leading up to Kuntz's initial consultation with Berger reflect the disclosure of general information about the earlier custody proceeding, but do not disclose the exchange of any legal advice or confidential information. The evidence in this record does not establish Kuntz provided legal advice to Berger during the initial consultation or the full extent of the information that may have been exchanged during that consultation. The evidence in this record does not clearly and convincingly establish that the nature and the circumstances of the information exchanged during Kuntz's initial consultation with Berger created a lawyer-client relationship.

■ [¶ 22] We conclude the evidence in this record does not clearly and convincingly establish Kuntz's initial consultation with Berger established a lawyer-client relationship and invoked duties to a former client. Rather, the evidence in this record establishes Kuntz's consultation with Berger resulted in a "potential client" relationship under N.D.R. Prof. Conduct 1.18, and under that rule, Kuntz was not prohibited from representing a client with an adverse interest in the same or a substantially related matter unless she acquired significantly harmful information from the potential client. N.D.R. Prof. Conduct 1.18 (comment 6). In *Disciplinary Bd. v. Carpenter*, 2015 ND 111, ¶ 15, 863 N.W.2d 223 (quoting the ABA/BNA Lawyer's Manual on Professional Conduct, at 31:157 (2011)), we discussed significantly harmful information:

Information may be "significantly harmful" if it is sensitive or privileged information that the lawyer would not have received in the ordinary course of due diligence; or if it is information that has long-term significance or continuing relevance to the matter, such as motives, litigation strategies, or potential weaknesses. "Significantly harmful" may also be the premature possession of information that could have a substantial impact on settlement proposals and trial strategy; the personal thoughts and impressions about the facts of the case; or information that is extensive, critical, or of significant use.

See also *Sturdivant v. Sturdivant* [367 Ark. 514], 241 S.W.3d 740, 22 Law. Man. Prof. Conduct 528 (Ark.2006) (meeting with prospective client about child custody matter gave lawyer information that potentially was "significantly harmful" and thus warranted disqualification of lawyer and his firm from representing adverse party in same matter).

Courts, in the context of disqualification motions, have said "in order for information to be deemed 'significantly harmful' within the context of [the equivalent of N.D.R. Prof. Conduct 1.18], disclosure of that information cannot be simply detrimental in general to the former prospective client, but the harm suffered must be prejudicial in fact to the former prospective client within the confines of the specific matter in which disqualification is

sought, a determination that is exquisitely fact-sensitive and -specific." *O Builders & Assocs., Inc. v. Yuna Corp.*, 206 N.J. 109, 19 A.3d 966, 976 (2011); *see also State ex rel. Thompson v. Dueker*, 346 S.W.3d 390, 396 (Mo.Ct.App.2011) (same).

[¶ 23] Kuntz's consultation notes and the handwritten notes from the telephone conference leading up to Kuntz's initial consultation with Berger reflect the disclosure of general information that Kuntz would have received in the ordinary course of due diligence and do not establish the exchange of privileged or confidential information or information that can be deemed prejudicial to Berger or Wyrick. We conclude there is not clear and convincing evidence in this record that Kuntz acquired significantly harmful information during her consultation with Berger.

### IV

[¶ 24] We conclude the evidence in this record does not clearly and convincingly establish Kuntz breached her duties to a potential client under N.D.R. Prof. Conduct 1.18 and that her representation of Bergquist constituted a conflict of interest. We dismiss the complaint against Kuntz.

[¶ 25] CAROL RONNING KAPSNER, LISA FAIR McEVERS, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.

GERALD W. VANDE WALLE, C.J., concurs in the result.